MATILDA C. L. HUGHES, Executrix, Appellant, v. HERMAN
GREIDER, Appellee.

**WITNESSES:** Credibility—Explanation of Inconsistency. It is the
sole province of the jury to pass on the explanation which a liti-
gant may make of his inconsistent testimony.

**FRAUD:** Examination as Defeating Reliance on Representations. The
victim of fraudulent representations as to the non-overflow char-
acter of land is not precluded from relying on the representations
because of having personally examined the land, when such exami-
nation was made under circumstances which would not enable the
party to determine whether the land was subject to overflow.

**LANDLORD AND TENANT:** Leases—Rescission—Self-Serving Dec-
laration in re Intention. When a tenant rescinds and repudiates
a lease, the landlord must, *before rerenting the premises,* determine
whether he will accept or reject the rescission. It follows that the
landlord's self-serving declarations *after rerenting* are wholly inad-
missible to prove that, when he rerented, he was doing so on behalf
of the tenant.

**EVIDENCE:** Declarations—Self-Serving to Prove Intent. The self-
serving declarations of a party are inadmissible to prove what in-
tent the party had at a prior time.

**TRIAL:** Instructions—Permissible Prolixity. Prolix instructions will
not be ground for reversal, when the pleadings are startlingly so,
and when the court has substantially reduced them in his instruc-
tions.

*Appeal from Iowa District Court.*—R. G. POPHAM, Judge.

NOVEMBER 14, 1922.

ACTION for damages for breach of a contract of lease. The
defense was predicated upon alleged false representations which
induced the execution of the lease, and upon a timely rescission
by the defendant and a surrender of the premises and the ac-
quiescence of·the plaintiff in the rescission, and his acceptance
of the surrender. Defendant also prayed, by a counterclaim, to
recover an advance payment of $500 which had been made by

him.   There was a verdict for the defendant for $500, and judgment thereon.   The plaintiff appeals.—*Affirmed.*

*Snyder & Snyder,* for appellant.

*Charles E. Hughes* and *Havner, Hatter & Harned,* for appellee.

EVANS, J.—The lease was entered into on September 1, 1920, by the plaintiff's intestate, John Hughes, as lessor, and by the defendant as lessee.   It covered a farm of 345 acres, and was for a term of three years, beginning March 1, 1921, at an annual rental of $3,440, of which the sum of $500 was paid in advance.   Prior to the lease, the parties were strangers to each other.   The defendant had seen Hughes's advertisement of the farm for rent in a Davenport paper, and responded thereto. The fraudulent representations charged were, in substance, that the farm was a good farm, and was not subject to overflow.   The making of the representations is denied by plaintiff.   That the representations, if made, would have been false, is conceded. That is to say, it is conceded that the farm was subject to overflow.   The farm lies upon the Iowa River bottoms, near the river, and is partly in Tama and partly in Benton County.   It is traversed by Salt Creek, which bisects it diagonally, northwest to southeast.   This creek has its source 25 or 30 miles farther north, and has a watershed of very hilly land.   This results in sudden, frequent, and extensive overflow.   In times shortly previous to the date of the lease, the farm had been completely submerged under a depth of several feet of water.   Before entering into the lease, the defendant, Greider, went with Hughes upon the farm, and saw it.   He had no previous acquaintance with it.   He was permitted to make all the examination thereof that he wished.   One of the points made against him now by the appellant is that he had his opportunity to see and judge the farm, and that he is precluded thereby from claiming that he was misled.   There was no flood upon the farm, nor sign of one, when he visited it.   At that time, Salt Creek looked as diminutive as the Tiber in the drouth of summer, and as harmless as a sleeping serpent in wintertime.   That it was not always thus is undisputed in the record.   Later, the defendant

claims to have learned of the overflow character, and on January 11, 1921, served upon Hughes a notice of repudiation and rescission, on the ground of fraudulent representation, and tendered to him a surrender of the premises. No immediate response was made to this notice by Hughes, nor was any made prior to February 12, 1921, on which date Hughes rented the farm to his son-in-law for the full term of three years, for $2,600 per year. He charges the defendant with the deficiency of $840 per year for the term of the lease, as his measure of damages. The defense interposed is twofold: First, that the defendant rescinded and surrendered, and that Hughes acquiesced in the rescission, and accepted the surrender; second, that the defendant was induced to execute the lease by the alleged false representations, and that, because thereof, he did rescind the contract, as he had a right to do, regardless of the acquiescence or acceptance by Hughes. Shortly after the 12th of February, Hughes died, and is represented herein by his administratrix, as plaintiff. The foregoing is, perhaps, a sufficient preliminary statement to enable us to consider the particular errors assigned as grounds for reversal.

I. The plaintiff moved for a directed verdict, predicating his motion, in part, upon certain testimony given by the defendant himself. The testimony so relied on was given in response to two or three successive questions, of which the following are sufficient examples:

1. WITNESSES: credibility: explanation of inconsistency.

"Q. Now, at the time that you were down around the barn and other buildings on this place, as you have testified, and at the time mentioned in your testimony, was anything said to you by any person in regard to this farm being subject to overflow? A. Not that I know. Q. Now, at the time, Mr. Greider, that you were in these buildings,—these barns and other outbuildings, as you have testified,—and after you had come back from the trip out on the farm, was anything said to you by anybody in regard to this farm, as to whether or not this was an overflow farm? A. Not that I know of."

The defendant relied upon the testimony of one Beem, to show the making of false representations by Hughes to the defendant, in the presence of this witness. The testimony of the defendant above quoted was, on its face, contradictory to the

testimony of Beem. Later, the defendant was recalled to the stand, and corrected this testimony. The substance of his explanation was that he did not comprehend the questions put to him, in making his answers. A large part of appellant's argument is devoted to the proposition that the defendant should be held to this testimony, and should not be permitted to stultify himself by the attempted corrections. Sufficient to say, the plaintiff's point is wholly untenable. The question thus raised is one of the credibility of the witness. Whatever his corrections and his explanation, he had to sustain his credibility before the jury. It appears from the record that the defendant is foreign-born, a native of Switzerland, whose knowledge of English does not exceed the requirements of very commonplace conversation. It was permissible for the jury to believe that he had not comprehended the questions which he had thus answered. Indeed, we are ourselves impressed, from a reading of the record, that it was a true explanation. We hold, therefore, that such evidence was in no manner conclusive upon the defendant or upon the court, and that the plaintiff was not entitled to a directed verdict because thereof.

II. It was further urged, as a ground of motion for directed verdict, and is now urged here, that the defendant was precluded from relying upon the alleged false representations complained of, because he had inspected the

2. FRAUD: examination as defeating reliance on representations.

farm, and acted upon his own judgment. Sufficient to say, as to this point, that, from the record, it was permissible for the jury to find that the opportunity furnished to him by his visit upon the farm to discover the overflow character of Salt Creek was wholly inadequate to that end. This being so, he had a right to rely upon representations, if any were made.

III. The plaintiff offered to prove certain statements made by the decedent and certain actions done by him, looking to a demand for damages from the defendant, such statements and actions being made and done on February 13

3. LANDLORD AND TENANT: leases: rescission: self-serving declaration in re intention.

and February 14, 1921. This offer of evidence was rejected by the trial court, and complaint is now made thereon. This evidence purported to set forth certain instructions given by Hughes

to his daughter and her husband, to whom he had rented the farm. The purpose of the evidence was to show that Hughes had elected not to accept the surrender of defendant's lease and not to assent to a rescission, but, on the contrary, had elected to hold the defendant to the contract and to claim damages from him. Its purpose was also to show that Hughes intended the renting of the farm to his son-in-law as being done on behalf of the defendant in mitigating damages, and not as an acceptance of the surrender of defendant's lease. The argument of appellant is that he was entitled to prove the intent of Hughes by his words and acts. If Hughes were living, he could doubtless have testified to his intention. Within certain limitations, he could prove what he did and said, so far as the same bore upon the exercise of his right of election. When the defendant declared a rescission, and tendered the surrender of the premises, and, in effect, abandoned them on his own part, it gave to Hughes a right of election either to accept or to reject the rescission. Not only did he have such right, but it became obligatory upon him to exercise it. He was bound to elect. If he elected to reject the rescission and surrender, it was his privilege to do so, and to claim damages, and to rerent the premises for the benefit of defendant, in mitigation of damages. If he elected to accept the surrender, his right of control of the premises was fully restored, and he had a right to rent the same in his own behalf to whomsoever he would. He did rent them. After he had rented to his son-in-law, he first made known to the defendant that he elected to claim damages and to treat the renting of the farm to his son-in-law as done for the benefit of the defendant. On the other hand, the defendant contended that he had by his conduct already acquiesced in the rescission and surrender, and that his election was thereby made, and was irrevocable later. Did Hughes rent the premises in his own behalf to his son-in-law, or did he rent the same for the benefit of defendant? That is the question. That question depends upon what his election had been, prior to the making of the lease. Not only was he bound to make the election, but he necessarily *made* such election before he executed the lease. It was legally necessary for him to know, when he executed the lease, whether he was executing it in his own behalf or for the benefit of the

defendant. He must be deemed, therefore, to have elected on or before February 12th. Being under obligation to make the election, he was necessarily also under some burden of duty to make his election known. The requirements of the law in that regard are not formal. Quite the usual method in case of a rejection is that the landlord should notify his tenant of such rejection. We have no occasion to say in this case that such a course was legally necessary. The trial court submitted the case to the jury on the theory that it was not. But the landlord could not, in such a case, avoid his obligation to elect, by mere silence or inaction. Having refrained from imparting any word to the defendant, Hughes took the risk of having his inaction and silence considered as circumstances tending to show acquiescence. The defendant gave his formal written notice on January 11th. For 32 days, Hughes uttered no word and did no overt act which would reveal his purpose to the defendant. But his very silence was conduct from which he could not escape. It was within his power to speak definitely, and to set speculation at rest as to his purpose. Having chosen to remain silent, he took the risk of such unfavorable inferences as a jury might fairly draw from his conduct, such as it was. The plaintiff offered to show by the rejected evidence that, on February 13th, he gave certain instructions to his daughter, looking to the prosecution of a suit for damages against the defendant. The intent of Hughes on the 13th was not the criterion. The question was, What was his intent prior to the making of the lease? His subsequent declarations would not be admissible in his own favor, in evidence of a past fact. It is no more admissible in behalf of his administratrix than it would have been admissible in his own favor, had he lived. Such declaration was clearly self-serving. Appellant cites many authorities.

4. **EVIDENCE: declarations: self-serving to prove intent.** Not one of them goes to the point that subsequent self-serving declarations may be proved, as evidence of intent on a prior date. Considerable reliance is placed by appellant upon *Hickman v. Breadford,* 179 Iowa 827, upon this and other features of the case. But that case was tried upon a stipulation of facts, which included the fact that the landlord had elected to claim damages, and that he had rerented the premises for the benefit of the

tenant.    The proffered evidence was properly rejected herein.

IV.    Particular complaint is urged against the instructions of the court, in that they failed to state the issues concisely, and in that the statement of issues by the court amounted to setting forth copies of the pleadings, or portions thereof. That the statement of issues by the court is prolix may be conceded.    As compared with the pleadings themselves, it appears to be reasonably concise.    When attorneys persist in prolixity of pleading, they must be prepared to endure some degree of prolixity in the statement of issues by the court.    The trial judge is between two fires.    On the one hand, he must be concise; on the other, he must omit nothing.    The pleadings have been abstracted in appellant's abstract, and we. may assume that they have been there presented in as concise form as they will bear, for appellate consideration.    The petition and amendment and reply, as abstracted, cover 18 printed pages.    The answer and its amendments cover approximately the same area.    We may assume that the original pleadings have been much condensed by the process of abstracting for the printed page.    The statement of issues, as made in the instructions, comprises 10 printed pages.    Prolix as this may appear, it does represent a substantial condensation, as compared with the condensation thereof accomplished by the abstract. ' We see no fair ground of complaint by the appellant at this point.

5. TRIAL: instructions: permissible prolixity.

The foregoing presents the principal points that are argued by the appellant.    Eighty-nine errors are assigned as grounds for reversal.    Manifestly, we cannot discuss them all in detail. The weight of appellant's argument goes to the sufficiency of evidence in support of the two defenses pleaded by the defendant.    We are clear that the evidence in support of each was sufficient to go to the jury.    We discover no grounds of reversal among the errors assigned therefor.    The judgment below must, accordingly, be affirmed.—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.