HARRY R. CHRISTY and JESSIE J. CHRISTY, appellees, v. DALE L. HEIL and PATRICIA B. HEIL, appellants.

Nos. 50910
75625.

(Reported in 123 N.W.2d 408)

604

September 17, 1963.

W. Howard Smith, of Cedar Rapids, for appellants.

Warren C. Ackley, of Cedar Rapids, for appellees.

STUART, J.—Purchasers of real estate brought this action at law for damages which they allege were sustained by reason of the false representations of the vendors concerning the water supply on the property which was the subject of the contract between the parties. The jury returned a verdict in favor of purchasers in the amount of $2825. Vendors filed a motion for judgment notwithstanding the verdict and a motion for new trial which were overruled by a judge other than the trial judge, who had died before the motions were submitted. Subsequently vendors filed a petition to vacate judgment and for new trial which resulted in a judgment against them for costs. Vendors have appealed both cases which are now consolidated.

The defendant-vendors purchased the property in question in 1954 and lived there until August 13, 1960. On May 23, 1960, vendors signed an offer and acceptance on another property and executed the purchase contract August 10, 1960. On August 2, 1960, vendors installed a filter in the water system. They replaced the filter cartridge one time after they had moved out.

Purchasers first saw the property in late August when it was empty. A key was obtained and they were allowed to inspect the premises freely. They admit they were on the premises five to eight times prior to signing the contract.

On September 10 vendors and purchasers were both on the premises. At that time "Christy [purchaser] told Heil [vendor] that he had a large family, and would like to know the condition of the well, and he said the water was good and clean, we would not have any trouble with the pump, and there was plenty of water, the well is a good well and the water is clean". This conversation is supported in substance by Mr. Wilfred Kenny the real-estate agent who was also present. On cross-examination Mr. Christy testified that before he moved in "he did not use the water out there on those occasions when he was out there, but he could not remember, it is possible that he might have".

The contract of purchase was executed November 4, 1960. While the purchasers were moving into the house on November 5, a water faucet was turned on and only a small stream came out. About this time Mr. Heil drove up and Mr. Christy told him about the water. Heil then, for the first time, told him

about the filter and showed him where it was, how to take it apart and clean it and suggested that they get a new filter cartridge.

There is evidence that when the Christys moved in, the water was not good clean water and was not fit for human consumption. Vendors claim they used the water up until the time they moved out and the only thing wrong with it was that it would get cloudy. They admitted having algæ difficulty in the past.

The trial court in this case instructed the jury the plaintiffs must establish by clear, satisfactory and convincing evidence that the defendants or either of them knowingly made false representations concerning the condition of the well with intent to deceive plaintiffs and that they as ordinarily reasonable and prudent persons had a right to rely upon such representations and did so rely. In addition the court instructed upon plaintiffs' duty to investigate as follows:

"You are instructed that the plaintiffs had a duty to investigate the facts pertaining to the land which they were about to purchase, and that if they had the means of investigating and did not investigate, or if the circumstances attending the transaction were such as to put them on inquiry and they did not make any inquiry, they cannot recover against these defendants even though the representations made by the defendants were false and known by the defendants to be false and made with the intention to injure the plaintiffs, unless you further find that the plaintiffs were induced to refrain from investigation by acts and statements of the defendants."

No exceptions were taken to these instructions and they are now the law of the case. They express the law as set forth in the numerous cases involving false representations which grew out of the land boom of the early 1920's. The trend of recent cases is toward the doctrine that a vendor cannot shield himself from liability by asking the law to condemn the credulity of the purchaser. 55 Am. Jur. 539, Vendor and Purchaser, section 67. We are not called upon to review our prior opinions in the light of the present trend in this case and shall not do so.

I. Vendors assign 18 errors which are argued in six divi-

sions. The first six alleged errors are argued under the proposition that a purchaser of realty who examines the premises prior to the purchase thereof is precluded from recovery upon the grounds that he either did not rely, or had no right to rely, upon the alleged false representations.

This is not a correct statement of the law. The mere fact an investigation has been made does not preclude the purchasers from recovering for damages sustained as a result of vendors' false representations. The facts and circumstances vary in each case. Whether the purchaser should be precluded from recovery because of his investigation or opportunity to investigate is ordinarily for the trier of fact. Bean v. Bickley, 187 Iowa 689, 701, 174 N.W. 675; Eckstein v. Storck, 199 Iowa 1375, 1379, 203 N.W. 796; Hughes v. Greider, 194 Iowa 726, 729, 190 N.W. 420. The evidence, which will be discussed under subsequent divisions, created a jury question in the instant case.

II. In the first division appellant also argues one cannot, after discovery of the falsity of representation, enter into a contract and at the same time demand damages for fraud. This is a correct statement of the law but does not apply to the facts in the instant case as the contract had been signed, down payment made and possession assumed prior to the discovery that the well was no good. The contract was executory only to the extent of the remaining monthly payments and delivery of the deed and abstract.

The majority rule as analyzed in 13 A. L. R.2d 807, 815, is that a party defrauded in the making of a contract who discovers the fraud after having partly performed may continue with performance and also have his action in damages. The Iowa rule seems to be that one cannot recover damages if when one discovers the fraud he is still wholly at liberty to save himself. The theory is that any injury sustained thereafter is self-inflicted. We say in Bean v. Bickley, 187 Iowa 689, 711, 174 N.W. 675, 684:

"The true interpretation of the rule is that, if the contract remains executory, in whole or in part, when the fraud is discovered, and no injury will be suffered by rescinding instead of affirming, then any injury caused by proceeding is self-inflicted.

There is not, and there should not be, a general rule, even in an executory contract, that mere discovery and proceeding bars all rights to redress. That must depend on the situation of the wronged party. He should not be compelled to refrain from affirming and proceeding further, if rescinding will lose him a profit he would have enjoyed, had he been fairly dealt with—much less, if rescinding will cause him actual injury. It will be found, upon careful examination, that the cases which, on surface reading, declare that acts of affirmance waive damages, are invariably cases (and some of them note the fact) wherein the defrauded party could save himself from further loss by rescinding, and would suffer no injury therefrom."

■ In that case payments were still due on notes secured by a mortgage. In the instant case payments are still due under the contract. Purchasers should not be compelled to rescind and lose the advantage of a favorable transaction because false representations were discovered before payment was made in full. The Iowa rule differs little from the general rule in its effect.

■ ■ III. Appellants urge the statements alleged to have been made were matters of opinion which should not have been relied upon under the circumstances. The alleged statements are that the water was good and clean, there would not be any trouble with the pump, there was plenty of water, and that the well was good. Ordinarily the question of whether the representations made are opinion or fact is for the jury to determine and depends upon the facts and circumstances in each case. Hetland v. Bilstad, 140 Iowa 411, 419, 118 N.W. 422; Owens v. Norwood-White Coal Co., 188 Iowa 1092, 1116, 174 N.W. 851; Boysen v. Petersen, 203 Iowa 1073, 211 N.W. 894; Hall v. Crow, 240 Iowa 81, 34 N.W.2d 195; Lamasters v. Springer, 251 Iowa 69, 99 N.W.2d 300. In this case it was for the jury to determine whether the statements that "it was a good well" and "the water is good" were opinion or fact. The jury could have concluded the defendants were in a position to know the actual condition of the well and intentionally misrepresented the facts. On the other hand the jury could have believed the defendants used the well all the time they lived on the premises and had the honest opinion that the well was good. However plaintiffs claim de-

fendants went further and stated that the water was clean. Defendants admit the water was not clean but deny making such statements. Mr. Heil testified: "I did not tell him that the water was clean, because we had had algae in the water, and I was not one to be loose with the truth." The question to be determined by the jury was whether the statement was actually made, not whether it was opinion rather than fact.

IV. Under the same division, defendants urge that they were entitled to an instruction on "puffing" or "dealers talk", as this was a matter of opinion and not a statement of fact. No requested instruction was filed but the following record was made:

"THE COURT: Defendants, what about the statement of the issues?

"MR. SMITH: I see nothing. And relative to the instructions, the only thing, it seems to me that possibly there should be embodied in the instructions somewhere a statement relative to puffing.

"THE COURT: We will note your objection, Mr. Smith and it will be preserved.

"MR. SMITH: My own thinking is to me 'it is a good well' is puffing."

■■ We need not decide whether this record was sufficient to preserve the defendants' objections to the instructions and alert the court to the claimed deficiencies in the instructions under the cases of Clayton v. Blair, 254 Iowa 372, 117 N.W.2d 879, and Oltmanns v. Driver, 252 Iowa 1066, 109 N.W.2d 446, as the defendants were not entitled to an instruction on puffing. The defendants admit they knew the water was not clean. If they made a statement that it was clean, such a statement would be a misrepresentation of a known fact, not an opinion. The trial court required the plaintiffs to prove "that the defendants, or either of them, falsely represented to the plaintiffs that the well was good, and the water supply located on the premises was clean, pure and sufficient for the purpose of inducing the sale of the premises here involved." Before the jury could find for the plaintiffs under this instruction they would have to find that defendants made the statement that the water was clean.

As this is clearly a misstatement of a fact, the instruction on puffing would not have been proper. The court in the same instruction also required plaintiffs to prove that the defendants made the representations knowing that they were false and with the intention of deceiving plaintiffs. The plaintiffs were also required to prove that they, as ordinarily reasonable and prudent persons, had a right to rely on such representations and did so rely. These propositions together gave the defendants all they were entitled to under this record.

V. In Division III defendants argue they were entitled to a new trial on the ground that the verdict was contrary to the instruction on plaintiffs' duty to investigate. We do not agree. While they had free access to the premises, this does not necessarily mean they had the means to investigate these particular false representations. Vendors testified the water was clear if it had settled in the pressure tank. The running of the water from a faucet under such circumstances would not reveal its true condition. Vendors had placed a filter on the system, which would hide the true condition of the water from the purchasers. It was for the jury to determine whether the purchasers had the means to investigate.

Vendors also claim they said nothing and did nothing to induce the purchasers to refrain from investigating. Again this is a jury question. Certainly the statement the well is good and the water is clean and there will be no trouble with the pump is inclined to allay doubts as to the condition of the water system. The vendors could have answered the inquiry by stating the facts as they knew them to be. They could have said, "well the water is cloudy and we have had to put chlorine in the well on two occasions to try to kill the algæ. We put a filter on shortly before we moved out and had to change the cartridge once after that, but we used it all the time." Such an answer would have alerted purchasers to the true condition of the well and required an investigation. We cannot say as a matter of law the answer given did not serve as an inducement to refrain from investigating.

Evidence of installation of a filter two weeks before moving and the replacement of the filter cartridge when they were no

longer using it at all creates a jury question as to whether these acts were done to deceive the prospective purchasers and induce them not to investigate further. It was for the jury to determine under this investigation instruction whether purchasers acted as reasonable, prudent persons in relying on the acts and conduct of the vendors instead of making a more complete investigation. This is not the type of defect which is readily discernible. A mere turning on of the water would have disclosed nothing as to its condition or quantity. The jury could find the purchasers acted as ordinarily reasonable and prudent persons in relying on the vendors' statements. Representations that property is well or adequately supplied with water have been held sufficient to avoid a sale in Arkansas, Arizona, California, Oregon and Washington. 91 C. J. S. 927, Vendor and Purchaser, section 65, note 31.

VI. Christy testified without objection that if he "had known of the well condition as it existed, he would probably have paid around $3000 less than the $16,750 which he did pay."

Mr. Henry Rinderknecht, a real-estate salesman, was asked:

"What if any difference in value there might be as to the Christy acreage if it had a good, pure and sufficient supply of water, and if the well was in good condition and would cause no trouble, and it later developed that the water supply and well were not as stated above, but rather was dirty, smelly, had algæ in it, and that it was not fit for drinking or cooking. Do you have an opinion as to difference in value as to the property. And the answer was yes, and he was then asked, what is your opinion, and objection was made, '——as calling for the opinion and conclusion of the witness, no proper identification, it assumes facts, not properly shown in evidence. I would like to further object to the question because it makes no statement or comparison, or it shows nothing with reference to the age of the well, it says nothing as to whether or not the well has been properly cared for since that time, it says nothing as to whether or not an attempt has been made to repair the well, which the record now shows none has been made, the question is based upon a new well apparently, rather than the well which is in evidence in this record.' And the objection was overruled and witness answered, 'I would say between $2000 and $2500.' "

612

The same answer was given by Mr. Edward F. Beranek to the identical question over a similar objection.

 The defendants now urge the trial court erred in overruling their motion for new trial "on the ground that the evidence in regard to the value or values should have given the actual value of the property with the well in good condition, as compared with the actual value of the property without the well in good condition—". They point out that it is improper to permit witnesses to testify as to the difference in value, citing cases which hold that questions directed to the amount of damages sustained are improper as an invasion of the province of the jury, and that questions should be directed to the fair market value of the property as represented and the fair market value in its actual condition. Richardson v. Webster City, 111 Iowa 427, 82 N.W. 920; Boddy v. Henry, 113 Iowa 462, 85 N.W. 771, 53 L. R. A. 769; Kukkuk v. Des Moines, 193 Iowa 444, 453, 187 N.W. 209. All of these cases, however, preceded Grismore v. Consolidated Products Co., 232 Iowa 328, 344, 5 N.W.2d 646, in which we held it was not improper to ask a qualified witness a question calling for an opinion on an ultimate fact to be determined by the jury, if the inquiry was directed to a matter which is the proper subject of expert testimony. The case contains a thorough discussion of this proposition. It is not necessary to cite cases holding property values are the proper subject of expert testimony. As a question calling for the difference in the value of a certain property with a well in good condition and the value of the same property with a well with water not fit for drinking or cooking is no longer objectionable as an invasion of the province of the jury, there is no longer any reason to require the witness to assign values to the property in the comparative conditions. If the separate values are deemed important they may be inquired into on cross-examination. The question asked the expert witnesses was not improper.

 VII. Defendants ask for a new trial, or in the alternative, a remittitur, on the ground that the verdict was excessive and the result of passion and prejudice. Most of the testimony relating to damages has been set out in the foregoing division. In addition there is evidence the purchasers received an estimate

on the cost of a new well of about 300 feet at $3.50 per foot. One of the plaintiffs' witnesses as to the difference in value testified that two years before he had drilled a well on his property about two miles away for $800. The cost of a new well is not the proper measure of damages, but when the misrepresentations deal solely with the water supply it is a factor to be considered. The presence or absence of a good well on a property could affect its market value by a much greater amount than the actual cost of digging the well. As one witness explained: "If you have a good well that you can recommend, fine, if you have a well that has poor water in it—you are lucky to make a sale at all."

 Plaintiff testified without objection that he would probably have paid $3000 less for the property had he known the condition of the well. The only other evidence estimated the difference in the value of the property with or without a good well at $2000–$2500. While the jury award seems quite liberal, there is evidence in the record to support it and we cannot interfere.

VIII. Defendants argue there was no clear, satisfactory and convincing proof of the vendors' alleged false representations or their knowledge that the representations were false. A large portion of this argument is devoted to a discussion of the vendors' evidence. We must review the evidence in the light most favorable to the purchasers. It is without dispute that the water was not fit for human consumption when purchasers took possession. Vendors concede they had difficulty in the past with cloudy water and treated the well on two occasions with chlorine for algæ. The installation of the filter system furnished proof they knew the water system was not what it should be, particularly in view of the fact the filter cartridge had to be replaced while the house was vacant. There was sufficient evidence to support a jury verdict for the plaintiffs.

IX. Defendants also appealed from the judgment against them on their petition to vacate judgment and for a new trial. As we have held there were no errors in the original proceedings, the grounds for new trial based upon alleged procedural errors become unimportant as they could not have been prejudicial. We will therefore consider only the complaint that the

court erred in failing to grant a new trial on the ground of newly discovered evidence.

 Defendants offered to prove the plaintiffs drilled a well on the premises after the trial for the total sum of $1280.50. This offer was denied by the trial court and judgment was entered against the defendants. Courts do not favor granting of new trial for newly discovered evidence and it should be closely scrutinized. Eller v. Paul Revere Life Ins. Co., 230 Iowa 1255, 300 N.W. 535; Loughman v. Couchman, 243 Iowa 718, 53 N.W.2d 286. If the evidence is cumulative, it will not entitle the party to a new trial. Rauch v. Des Moines Electric Co., 206 Iowa 1155, 221 N.W. 788.

 We have previously indicated that the cost of a new well, while material in arriving at the difference in the value of the property with or without a good water supply, it is not the measure of damages. The difference in value may vary substantially from the actual cost of digging a well and the cost of the well is not conclusive as to the damages. In addition the evidence is cumulative in nature. The defendants offered evidence that plaintiffs had received an estimate for a well which would have cost $1050, and that a well 204 feet deep had been drilled at a cost of about $800 within two miles. The jury therefore had some conception of the cost of a new well.

Defendants are asking that we grant a new trial because the actual cost of drilling a new well differed from the estimate of the damages. Even if this were the actual measure of damages we could not grant a new trial on this ground. Such position would make every case which involved an estimate as to the cost of repairs, future medical expense, future loss of wages and other similar items of damages subject to new trial if the actual cost differed from the estimate. We cannot keep cases in a state of uncertainty for a year nor hold estimates to such accuracy. Defendants were not entitled to a new trial on the ground of newly discovered evidence.

This case is hereby—Affirmed.

All JUSTICES concur.