Steven John SLOTKIN, an infant by his mother and natural guardian, Charlotte Slotkin, and Charlotte Slotkin, as Executrix of the Estate of Bert Slotkin, Deceased, Plaintiffs,

v.

CITIZENS CASUALTY CO. OF NEW YORK, Allstate Insurance Company, American Motorists Insurance Company, American Mutual Insurance Company of Boston, Employers Mutual Liability Insurance Company of Wisconsin, Guaranty Reinsurance Company, Urbaine Fire Insurance Company, Grange League Insurance Co., National Casualty Co., Hardware Mutual Casualty Co., Arkwright-Boston Mfrs. Mutual Insurance Company, Paul Ratner, George Berkowitz, Christopher McGrath, Jr. and John McGrath, Defendants.

No. 71 Civ. 4044 (MP).

United States District Court,
S. D. New York.

March 1, 1978.

Arum, Friedman & Katz, New York City, for plaintiffs; by Theodore H. Friedman, New York City.

Granik, Silverman, Sandberg & Nowicki, New City, N.Y., for defendant Citizens Casualty Co.; by David W. Silverman, New City, N.Y.

Julien & Schlesinger, New York City, for defendant Paul Ratner; by Stuart A. Schlesinger and David Jaroslawicz, New York City.

Tell, Cheser, Breitbart & Lefkowitz, New York City, for defendant George Berkowitz; by Seymour Lefkowitz, New York City.

Hart & Hume, New York City, for defendant Christopher McGrath, Jr.; by Joseph A. Bergadano, New York City.

## OPINION

POLLACK, District Judge.

A jury has returned a verdict that the moving defendants herein committed fraud, inducing plaintiffs to settle a medical malpractice action for less than they otherwise would have obtained. Now before the Court are defendants' motions to dismiss the complaint and to direct a verdict in their favor, reserved during trial, and post-trial motions to set aside the verdict and for judgment n.o.v.

The following facts have been amply proved, and indeed are uncontested. The infant plaintiff, Steven Slotkin, was born at the Brookdale Hospital in 1963 to a diabetic mother who had been admitted to the hospital in a state of toxemia. Early in his life he was diagnosed as suffering from cerebral palsy. He and his father sued the hospital in the New York Supreme Court, Kings County, alleging that Steven's disability stemmed from a condition of acetonuria in the mother due to the negligence of the hospital staff. The case went to trial before Justice Williams in late February 1970.

The hospital had a liability insurance policy issued by defendant Citizens Casualty Company, in the amount of $200,000, which was applicable to the claim. Shortly before commencement of the trial, Citizens retained defendant Christopher McGrath to represent the hospital. Early in the proceedings in the trial court, plaintiffs' counsel, Max Toberoff, Esq. received the impression that the Citizens policy was the only liability insurance covering the hospital and applicable to the claim, and he telephoned the hospital to warn it that it was exposed to a potential liability exceeding its insurance coverage. In response, the hospital sent defendant George Berkowitz, a trustee of the hospital and a lawyer, to the courthouse to protect the institution's interests. As the trial progressed through the plaintiffs' case, the lawyers discussed the possibility of a settlement. On March 4, defendant Paul Ratner, a claims manager for Citizens, arrived at the courthouse and joined the discussions. On the same day, a stipulation settling the case for $185,000 was read into the record, the Judge orally indicated approval thereof, and the jury was discharged.

Plaintiffs allege, and the jury apparently found, that the individual defendants mentioned above represented to Toberoff, during the settlement negotiations, that the $200,000 Citizens policy was the only insurance applicable to the claim. The jury must also have accepted plaintiffs' allegation that they were unwilling to demand more from the hospital than its insurance would cover,[1] and that therefore they relied on defendants' representations concerning the insurance. Finally, the jury must have concluded that the hospital had an umbrella policy providing a million dollars' worth of "excess" insurance under certain circumstances, with Lloyds Insurers unrelated to Citizens, which was applicable to the Slotkins' claim. The Lloyds group was not notified of the pendency of the trial and did not participate therein or in the negotiations and stipulation of settlement. The defendants allege that they were unaware at the time of the excess insurance above the primary coverage by Citizens, and the jury was instructed that it could return a verdict for the plaintiffs on a finding that the defendants conveyed a pretense of knowledge when they were recklessly ignorant of the truth.

■ The following facts are also both amply proved and uncontested. Because it determined the claims of an infant, the settlement stipulation was unenforceable[2]

---

1. Mr. Toberoff testified that he assumed that the hospital could satisfy any judgment that plaintiffs might obtain.

2. Mr. Toberoff conceded that failure or refusal of the Judge to make and enter a compromise order pursuant to NYCPLR §§ 1207–08 would render the stipulation for settlement unenforceable. Mr. Toberoff testified:

unless it was followed by a judicial order finalizing the arrangement, providing for the distribution of the settlement fund and terminating the suit. NYCPLR §§ 1207–08. Such a judicial order has the effect of a judgment. NYCPLR § 1207.

Within a fortnight after the stipulation was read into the record, and before the requisite order was made and judgment accordingly entered, Ratner was alerted to the existence of the excess insurance coverage. He promptly telephoned McGrath, and McGrath immediately notified Justice Williams and Toberoff. In a conference before Justice Williams, representatives of the excess carriers declined to recognize the settlement stipulation since they had not been aware of the trial, were not represented at the trial and had not participated in the stipulation. The hospital and Citizens offered to drop the settlement stipulation, to recommence trial of the claim before either a judge or a jury, and to permit introduction of the transcript of the medical and any other testimony from the earlier proceeding. The carriers of the excess insurance offered to appear if the case were retried and to recognize any obligation thereon owing to the hospital if given an opportunity to come in and defend the claim. The Judge, too, urged the plaintiffs to accept the proposals of a retrial made by the hospital, Citizens and the excess carriers, to no avail.

Insisting that retrial would be impractical because no medical experts were willing to testify, and vowing to seek damages for fraud, Toberoff orally and in formal papers demanded that Justice Williams finalize the arrangement, make the requisite compromise order and direct judgment thereby on the settlement stipulation. After considering the matter for over two months, Justice Williams acceded to plaintiffs' demand for execution of the settlement arranged, with an order of infant's compromise that does not mention the possibility of a fraud action.[3] The compromise was paid thereunder and the funds were distributed as ordered in the judgment. This suit followed. It went to the jury only as against the lawyers, Citizens, which was the primary insurance carrier, and its claims agent. The jury verdict was for the plaintiffs in sums stipulated separately as against each defendant in varying amounts.

■ The Court finds, as a matter of law, that plaintiffs' insistence on proceeding with and thereby obtaining the execution of the stipulation of settlement with full knowledge of the facts bars this action.

■ Under the governing law of New York, the victim of fraud generally may, upon learning the truth, affirm and complete performance of the contract, retain whatever benefits he has received thereunder, and maintain an action for damages. *Vail v. Reynolds,* 118 N.Y. 297, 302–03, 23 N.E. 301, 303 (1890); *Strong v. Strong,* 102 N.Y. 69, 73, 5 N.E. 799, 800 (1886); *Byrnes v. National Union Insurance Co.,* 34 A.D.2d 872, 310 N.Y.S.2d 781 (1970). *But see Glatzer v. Ax,* 63 N.Y.S.2d 551 (Sup.Ct.1946) (alternate ground). If a victim of misrepresentation learns the truth when performance of the contract has just begun, and he could rescind without significant prejudice, however, he waives the fraud if he proceeds to execute the agreement. *See A. G. Concrete Breakers, Inc. v. State,* 9 A.D.2d 995,

"He [the Judge] had it in his power to refuse to sign the compromise order . . . If he didn't, I would say that by logical operation the stipulation would be rendered valueless. . . We wouldn't be able to collect without the compromise order."
Moreover, the trial Judge had the unquestioned power to reject the settlement as inadequate or insufficient for the infant after learning of the existence of excess insurance coverage.

**3.** In view of the determination reached hereafter, it becomes unnecessary to construe the effect of the judgment ultimately directed by

Justice Williams. The parties are in dispute on whether the Judge's compromise order constituted a settlement value judgment and independent adjudication of the fairness of the settlement, and an expression on the best interest of the infant, the validity of which cannot now be questioned collaterally for error which does not affect the jurisdiction of the Court which rendered it. It is a settled principle that a valid judgment should not be subject to a collateral attack. *Crouse v. McVickar,* 207 N.Y. 213, 100 N.E. 697 (1912).

996, 194 N.Y.S.2d 743, 745 (1959) (alternate ground); *Kelly v. Otis Elevator Co.,* 283 App.Div. 363, 368, 128 N.Y.S.2d 39, 43 (1954), *aff'd mem.* 308 N.Y. 805, 125 N.E.2d 864 (1955) (dictum); *General Valuations Co., Inc. v. City of Niagara Falls,* 253 App. Div. 156, 157–59, 1 N.Y.S.2d 880, 882–83, *aff'd on this point mem.* 278 N.Y. 273, 15 N.E.2d 802 (1938).

Other jurisdictions take the same view. *See Simon v. Goodyear Metallic Rubber Shoe Co.,* 105 F. 573 (6th Cir.1900); *Kingman & Co. v. Stoddard,* 85 F. 740 (7th Cir.1898); *Advance Aluminum Castings Corp. v. Davenport,* 224 Ark. 440, 274 S.W.2d 649 (1955); *Lewis v. Carsh,* 79 Colo. 51, 244 P. 598 (1926); *Christy v. Heil,* 255 Iowa 602, 123 N.W.2d 408, 411 (1963) (dictum); *Eckstein v. Storck,* 199 Iowa 1375, 203 N.W. 796, 797–98 (1925); *Defiel v. Rosenberg,* 144 Minn. 166, 174 N.W. 838 (1919). Were the rule otherwise, a plaintiff would be able to recover damages for a self-inflicted injury, and exchange the right to rescind for a speculation on a jury's appraisal of his damages. *E. g., Thompson v. Libby,* 36 Minn. 287, 31 N.W. 52 (1886). Further, it would extend the principle allowing a victim of fraud to complete the contract and sue for damages beyond its original rationale, of assuring that one who is no longer in a position to rescind would not be deprived of all remedy, *Gould v. Cayuga County National Bank,* 99 N.Y. 333, 337, 2 N.E. 16, 17 (1885).

■ In the instant case, plaintiffs had not significantly changed position to their prejudice before learning the truth. No such prejudice can be attributed to the difficulties asserted by Toberoff with respect to retrying the malpractice case. There was no impairment of the facts giving rise to claims of malpractice by the hospital. Under New York law, plaintiffs were required to prove malpractice by the hospital in order to recover for fraud in the inducement of the stipulation of settlement. *Urtz v. New York Central & Hudson River R.R.,* 202 N.Y. 170, 175–76, 95 N.E. 711, 712–13 (1911). Thus, retrying the malpractice case would have been no more burdensome than

pursuing this action for fraud. Further, by obtaining a verdict in the present litigation, plaintiffs have proved that such a retrial was indeed practicable.

■ In reaching this decision, the Court has carefully considered Judge Motley's contrary conclusion at an earlier stage of this litigation, *Slotkin v. Brookdale Hospital Center,* 357 F.Supp. 705, 707 (S.D.N.Y.1972). Judge Motley did not have the benefit of a full record, including plaintiffs' demonstration of the practicability of retrying the malpractice claim, when she was required to render a decision. In any event, the Court is not obliged to adhere to another judge's earlier decision in the same litigation. *LeRoy v. Sabena Belgian World Airlines,* 344 F.2d 266, 274 (2d Cir.), *cert. denied,* 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965) (dictum); *Dictograph Products Co. v. Sonotone Corp.,* 230 F.2d 131, 134–36 (2d Cir.), *petition for cert. dismissed per stipulation,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956) (Learned Hand, J.). The earlier ruling does not relieve this Court of the obligation to present the Court of Appeals with what it believes to be a correct judgment. *Schmeider v. Hall,* 421 F.Supp. 1208, 1213 n. 6 (S.D.N.Y.), *aff'd,* 545 F.2d 768 (2d Cir.1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1601, 51 L.Ed.2d 805 (1977); *Rodriguez v. Olaf Pedersen's Rederi A/S,* 387 F.Supp. 754, 757 (E.D.N.Y.1974), *aff'd,* 527 F.2d 1282, (2d Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

■ Accordingly, defendants are entitled to judgment. In the alternative, a new trial is required. The jury returned separate awards of $20,000 against McGrath, $60,000 against Ratner, $100,000 against Berkowitz, and $500,000 against Citizens. The verdict is incorrect as a matter of law, for two reasons. First, separate wrongs resulting in a single, indivisible injury, as here, create joint and several liability for the whole harm. *Hill v. Edmonds,* 26 A.D.2d 554, 270 N.Y.S.2d 1020 (1966); *Hawkins v. Goll,* 256 App.Div. 940, 9 N.Y.S.2d 924, *aff'd mem.* 281 N.Y. 808, 24 N.E.2d 484 (1939); *Insurance Company of North Amer-*

258

*ica v. Lindsey,* 83 Misc.2d 495, 498–99, 372 N.Y.S.2d 164, 167 (Sup.Ct.1975). Second, the only basis on which the jury was instructed that it could hold Citizens liable was a theory of *respondeat superior* with respect to Ratner's liability. There is no justification for a verdict against Citizens more than eight times as great as that against Ratner. This error so clearly demonstrates that the jury yielded to its sympathy for a severely crippled child, and determined to provide for him without regard for the law, that it taints not only its findings as to damages, but its entire verdict.

The jury's verdict is set aside, judgment notwithstanding the verdict is directed for the defendants, the complaint is dismissed, and judgment shall be entered in favor of the defendants and against the plaintiffs, with costs to be taxed by the Clerk.

SO ORDERED.