**Fred LOCKARD and Carol Lockard, Appellants,**

v.

**Donald CARSON and Vivian Carson, Appellees.**

No. 62973.

Supreme Court of Iowa.

Jan. 23, 1980.

John R. Hearn of Payton & Hearn, Des Moines, for appellants.

Ed Skinner and Mary G. Hellweg, Altoona, for appellees.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves jury instructions on fraud in an action involving a count for deceit, in addition to another theory.

Defendants Carson owned and occupied a home near Bondurant, Iowa, which they desired to sell. They advertised in a local newspaper, and plaintiffs Lockard responded. After inspecting the property on February 2, 1976, Lockards made an offer to buy it. Carsons accepted the offer on the following February 4.

When Lockards attempted to obtain financing for the transaction, they were told their loan would be conditioned on satisfactory results from tests regarding the purity of the water from the well on the property. On February 18, 1976, the Polk County Health Department returned results of a test showing the water to be bacterially unsatisfactory. As a result of the test, the parties made an addendum to the offer to buy on March 17, 1976, by which Carson "guaranteed" the "purity" of the water "to such extent as to meet the regulations and requirements of the Polk County Health

Department," at their own expense. The well was subsequently chlorinated, and this brought about a satisfactory result in a bacterial test performed by the Polk County Health Department on March 25, 1976. Chlorination, however, apparently has no effect on sediment found in water, and Lockards introduced evidence that chlorination only temporarily corrected the bacteria problem and did not eliminate the bacteria. For example, Fred Lockard testified:

Q. Mr. Lockard, does actual chlorination for any period of time eliminate the bacteria? A. No.

Q. Have you tried that method of trying to eliminate the bacteria? A. It's good for a week. You know, it takes three days—You can't use your water for three days after you chlorinate it.

Q. Why is that? A. Polk County won't let you. You run it through the pipes, through the hot water system, through the whole system; you let it sit for three days and after that you start using it and you can't do anything with it in that time and then, you know, it comes back in a week and they will test it and it's good, and you come back a week later and it's bad.

Q. I take it these are the experiences you have had with this well? A. Yes.

A question thus existed as to whether the written guarantee was fulfilled as to "purity" of the water under the regulations, and also as to whether earlier oral representations were true.

The real estate transaction was closed on April 18 or 19, 1976. At that time Lockards had occupied the premises for approximately a month. Carol Lockard testified that "serious problems" with the well began in May of 1976. Lockards filed suit on June 16, 1977, asking damages on account of the impure water. The jury found for Carsons. Lockards appealed.

Lockards attack the trial court's fraud instructions on several grounds. They assert that the trial court misinstructed the jury regarding Lockards' burden of proof on fraudulent misrepresentations, that it erroneously refused to submit two of their theories for establishing fraud, and that it improperly instructed the jury regarding the standard of care Lockards had to exercise in order to recover for fraudulent misrepresentation.

I. *Quantum of proof.* Lockards first claim that the trial court misinformed the jury as to the quantum of proof for establishing fraudulent misrepresentations. The court began the instruction on the elements of fraudulent misrepresentation by stating that "before the plaintiffs can recover under Count II of their petition the burden of proof is upon plaintiffs to establish by evidence which is clear, satisfactory and convincing each of the following propositions. . . . ." Lockards assert on appeal that the instruction either should have required them to establish their case (1) by a preponderance of the evidence, or (2) by a preponderance of the evidence that is clear, satisfactory, and convincing.

■ Carsons argue initially that Lockards' objection to the instruction was not sufficiently specific to preserve the second alternative which Lockards present. Objections to instructions must be sufficiently specific to alert the trial court to the basis of complaint so that, if error does exist, the court may correct it before placing the case in the hands of the jury. *See, e. g., Wambsgans v. Price,* 274 N.W.2d 362, 365 (Iowa 1979); *State v. Blyth,* 226 N.W.2d 250, 273 (Iowa 1975); *Dutcher v. Lewis,* 221 N.W.2d 755, 759 (Iowa 1974).

■ We agree that Lockards' objection failed to alert the trial court sufficiently to their claim on appeal that a plaintiff must prove fraudulent misrepresentations by a preponderance of the evidence that is clear, satisfactory, and convincing. Lockards rely on their objection to Instruction 5 as a basis for preserving error. That instruction states in part (emphasis added):

Where a false representation of a fact susceptible of knowledge is relied upon as

constituting fraud, it must be shown by evidence on the part of the one claiming to have been defrauded, *which evidence is clear and convincing* that such a representation was made knowingly and with intent to mislead, or that the party making the representation made it recklessly, or asserted such representation as being true of his or her own knowledge without having any reasonable ground for believing it to be true, for the purpose of inducing the one claiming to have been defrauded to act.

With respect to the foregoing language, Lockards objected (emphasis added):

> [T]hat sentence refers to clear and convincing evidence. These Plaintiffs submit that the proper standard is by the preponderance of the evidence or the greater weight of the evidence and that the evidence must be by a preponderance of the evidence instead of clear and convincing, *and I submit that preponderance or greater weight of the evidence should be submitted—substituted, excuse me, for the language clear and convincing.*

Lockards' objection made clear that they desired to have the clear and convincing language replaced by preponderance of the evidence phraseology. The trial court was not apprised of the objection that its instruction should include both "preponderance" and "clear, satisfactory, and convincing" language.

As to the asserted error of which Lockards did apprise the trial court—failure to instruct the jury that Lockards merely had to establish their case by a preponderance of the evidence—we cannot accept Lockards' view of the law. This court said as recently as August of 1979 that the elements of fraud must be established by "a clear and convincing preponderance of the evidence." *Mills County State Bank v. Fisher*, 282 N.W.2d 712, 715 (Iowa 1979). Stated otherwise, plaintiffs must establish their case by a preponderance of the evidence that is clear, satisfactory, and convincing. *B & B Asphalt Co. v. T. S.*

*McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976). The purpose of that standard is to give deference to the presumption of fair dealing. *Mills*, 282 N.W.2d at 715; *Hall v. Wright*, 261 Iowa 758, 767, 156 N.W.2d 661, 667 (1968).

■ We do not accept Lockards' claim that the "preponderance of clear and convincing evidence" standard applies only to challenges of title and not to damage actions for deceit. First, Lockards cite no authority in support of such a distinction. On the contrary they concede that the asserted distinction is inconsistent with our opinions in damage actions based on fraud. *See, e. g., B & B Asphalt*, 242 N.W.2d at 284; *Grefe v. Ross*, 231 N.W.2d 863, 864 (Iowa 1975); *Syester v. Banta*, 257 Iowa 613, 623, 133 N.W.2d 666, 673 (1965). Second, the presumption of fairness rationale applies to actions for damages as readily as to challenges of title. We thus uphold the "preponderance of clear and convincing evidence" standard as the appropriate one in damage actions predicated on fraud.

■ In reaffirming the traditional instruction regarding a plaintiff's burden in actions based on fraudulent misrepresentation, we have not overlooked Lockards' other arguments. Contrary to Lockards' view, we do not believe the customary instruction to be inherently contradictory. As this court explained in *Hall v. Crow*, 240 Iowa 81, 92, 34 N.W.2d 195, 201 (1948), "clear and satisfactory" refers to the *character or nature of the evidence*, whereas "preponderance" of the evidence is a *quantitative* measure. Lockards rely heavily on *Bixby v. Carskaddon*, 55 Iowa 533, 8 N.W. 354 (1881). We do not think, however, that *Bixby* is inconsistent with the *Hall* explanation. In *Bixby*, a fraud action, the trial court gave a preponderance instruction, and this court did not reverse. The defendants had asked for and been denied an instruction using only "clear and satisfactory" language; on that ground they challenged the preponderance instruction on appeal. This court up-

held the instruction given on the ground it was "intended to determine the *quantity* of evidence required to overcome the presumption of honesty. . . ." *Id.* at 536, 8 N.W. at 355. Thus the court did not reject the clear and convincing standard as the appropriate qualitative measure. The defendants' objection at trial was not that the instruction be made complete, but that it be replaced by the other half of the appropriate instruction. This court merely refused to reverse on an instruction which was at worst incomplete. In this respect we find *Bixby* quite similar to the case at hand, and we likewise refuse to reverse on the basis of the instruction and objection here.

■ II. *Failure to instruct on fraudulent guarantee.* Lockards contend the trial court erred in refusing to grant their request for an instruction to the jury that a guarantee, if made with an intent not to honor it, may constitute fraud. The issue before us is not whether such an instruction is *ever* appropriate, since we have held that "a promise to perform a future act is an actionable representation when it is made with an existing real intention not to perform." *Grefe,* 231 N.W.2d at 867. Rather, the issue is whether the trial court's refusal to submit such a theory was appropriate in this particular case. In this connection, the theories of both parties must be submitted to the jury when supported by substantial evidence. *Doser v. Interstate Power Co.,* 173 N.W.2d 556, 559 (Iowa 1970).

The trial court's instruction regarding the operative facts on which Lockards based their action for fraud reads as follows:

Plaintiffs contend in Count II of their petition that they were induced to purchase the real estate from defendants by reason of the representations of defendant Vivian Carson, for herself and as agent for defendant Donald Carson, that the defendants used the well water for drinking purposes, that the well water was fit for residential purposes, and that defendants never had any problems with the well or the water from it.

The instruction went on to specify each of the elements of Lockards' case, one of which required Lockards to establish that Vivian Carson made the representations set forth in the preceding excerpt with intent to deceive and defraud the purchasers. The instruction made no reference to Carsons' guarantee of the purity of the water, on the fraud issue.

The trial court did not state the basis for its ruling, but Carsons suggest three grounds for the trial court's refusal to submit the requested instruction. They first assert that to give the instruction would give "undue emphasis" to a particular fact or theory. Second, they contend that granting the proposed instruction would change the theory of the case as it was pled and proven. Third, they argue that the guarantee in this case was given at such a time that it could not have had a causal connection with Lockards' alleged damages.

We cannot accept the "undue emphasis" rationale as a basis for refusal to instruct that fraud may be based on a promise made with no intent to honor it. The purpose of requiring a trial court to refrain from giving undue emphasis to a particular fact or theory is to prevent the jury from being misled. *See In re Estate of Iwers,* 225 Iowa 389, 401, 280 N.W. 579, 585 (1938). Given the trial court's elucidation of the representations on which actionable fraud in this case could be based, however, the *omission* of the requested instruction seems more potentially confusing than its inclusion would be. By the inclusion of specific misrepresentations allegedly made by the sellers as possible bases for a finding of fraud, the instruction which was given indicates that no other misrepresentations were involved. But if the sellers guaranteed the purity of the water at their own expense with no intention of fulfilling the promise, that misrepresentation might itself constitute fraud. The instruction given could reasonably lead a juror to ignore a legitimate basis for recovery—a result inconsistent with the purpose of the "undue emphasis" rule.

As to the second reason suggested by Carsons, we do not agree that the requested instruction would have changed the theory of the case as pleaded. The fraud count of Lockards' petition quotes the following language from the sale agreement: "That the Sellers, Donald G. Carson and Vivian M. Carson, hereby agree that they shall guarantee, at their own cost and expense, the 'purity' of the water to such extent as to meet the regulations and requirements of the Polk County Health Department." The petition went on to allege that "[a]t the time Defendants entered into the written sales contract (Exhibit "A") they knew their representations as to the purity of the water were false and they intended thereby to deceive these Plaintiffs and induce them to buy the property. . . ." The words "representations as to the purity of the water" are broad enough to comprehend the guarantee Lockards quoted earlier in the petition. We do not believe Lockards' requested instruction would have changed the theory of the case. Moreover, substantial circumstantial evidence supported submission of the issue regarding Carsons' alleged absence of intent, when the guarantee was given, to honor it.

The third ground suggested by Carsons is that the guarantee was given after the parties had already signed the offer to buy; hence it could not have induced the sale.

We reject Carsons' third ground for the reason that it focuses on the wrong time in determining whether actionable fraud occurred. Lockards signed the original offer to buy on February 2, 1976. Carsons signed the addendum containing the guarantee on March 12, 1976, and the parties closed the entire transaction on April 15, 1976.

■ Carson's third argument assumes that representations made after the offer to buy was originally signed are irrelevant to the issue of fraud, whereas in fact representations made prior to the consummation of the transaction are relevant to that issue. This principle is clearly illustrated by *Bean*

*v. Bickley*, 187 Iowa 689, 710, 174 N.W. 675, 683 (1919). It is the buyer's knowledge at the time of consummation that is usually determinative of the reliance issue. By going ahead with the transaction in reliance on the guarantee they assumed additional exposure to damage. We therefore reject Carson's third argument.

■ The requested instruction went to the heart of Lockards' claim. Carsons could cogently argue to the jury that their prior representations were immaterial, for Lockards learned of the facts about the water but consummated the transaction anyway. But Carsons could not make this argument about the guarantee they added, which induced the consummation. The error in refusing to give the requested instruction was prejudicial. *See Doser*, 173 N.W.2d at 559. Lockards are entitled to a new trial on this basis. We will however consider further issues which are likely to arise on retrial.

III. *Failure to instruct on concealment.* Lockards next contend the trial court erred in refusing their request to instruct the jury that fraud may arise not only from misrepresentation but from concealment as well. Here, as in the case of the preceding alleged error, the requested instruction was a correct statement of the law. *See Loghry v. Capel*, 257 Iowa 285, 289, 132 N.W.2d 417, 419 (1965). The issue is whether the trial court correctly concluded that the pleadings involved only misrepresentation and not concealment.

We now have notice pleading. Rule 69 of the Rules of Civil Procedure sets the standard: the pleading need only "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Iowa R.Civ.P. 69(a)(1).

Lockards sufficiently pleaded the concealment theory of recovery to warrant its submission to the jury. Their petition contained the allegation that appellees "knew their representations as to the purity of the water were false. . . ." In the past, this court has treated similar allegations of

affirmative misstatements as the functional equivalent of allegations of fraudulent concealment. *See Gee v. Moss*, 68 Iowa 318, 324, 27 N.W. 268, 270 (1886) ("The allegation that he made the alleged false statement as to its freedom from indebtedness, then, is in effect a charge that he fraudulently concealed the fact of its indebtedness.").

We cannot accept Carsons' attempt to distinguish *Gee*. Carsons suggest that the holding in *Gee* might have been different if the trial court in that case, rather than to give the requested instruction as it did, had refused to give it. This would give a trial court the option of giving or refusing to give a requested instruction to which the party is entitled. If retrial of this case brings forth substantially the same evidence, Lockards will be entitled to an instruction on fraudulent concealment.

IV. *Instruction on Lockards' standard of conduct*. Lockards' final contention is that Instruction 8 imposed on them a standard of care which is too high. The court stated in that instruction:

You are instructed that every false affirmation does not amount to a fraud. If the party complaining knew of or by an ordinary degree of caution could have ascertained the falsity of the representations complained of, then such party is not entitled to a verdict; and in this case, to entitle the plaintiffs to a verdict, you must believe from the evidence, not only that the representations complained of were made, but also that they were made under circumstances calculated to deceive a person acting with reasonable and ordinary prudence and caution; and in determining this question, the jury should consider all the circumstances under which the alleged representations appear from the evidence to have been made, and whether, under the circumstances, the representations were such as a person of common and ordinary prudence would or should have relied upon, or such as would be likely to mislead such person.

Carsons do not contest the principle that a buyer may in some instances recover for reliance on a misrepresentation even though investigation might have disclosed its false nature. *See Christy v. Heil*, 255 Iowa 602, 607, 123 N.W.2d 408, 411 (1963) (whether purchaser should be precluded from recovery because of his opportunity to investigate is ordinarily for trier of fact). They would restrict recovery however to cases in which the plaintiff has used "ordinary caution and diligence to protect his own interests. . . ." In effect they argue for a defense of contributory negligence to actions for fraud, to be ascertained by the objective standard.

Iowa case law is not altogether clear as to the requisite standard of care of plaintiffs asserting fraud. Carsons cite at least four cases which arguably support their theory— *Christy*, 255 Iowa at 611, 123 N.W.2d at 413; *Wead v. Ganzhorn*, 216 Iowa 478, 484, 249 N.W. 271, 273 (1933); *Boysen v. Petersen*, 203 Iowa 1073, 1080, 211 N.W. 894, 897 (1927); and *Ross v. Bolte*, 165 Iowa 499, 506–07, 146 N.W. 31, 34 (1914). But when this court was directly confronted with a case in which the trial court denied a request for an instruction that actionable misrepresentations must be of such a nature "as to deceive an ordinarily prudent person," the court stated:

It is to be conceded that authorities substantially to this effect may be found, but it is equally true that the rule as broadly stated by counsel is now generally repudiated by the courts. We have repeatedly refused to recognize it in cases of this character. The more reasonable and just rule is that, as between the parties to a contract obtained by fraud and deceit, the party making a misrepresentation for the purpose of inducing another to act will not be heard to say that his false statement ought not to have been believed.

*Sutton v. Greiner*, 177 Iowa 532, 540, 159 N.W. 268, 271 (1916) (citations omitted). *See also, Syester*, 257 Iowa at 616, 133 N.W.2d at 668 ("[C]aveat emptor is no longer the pole star for business.").

 We agree with Carsons that some misrepresentations may not justifiably be relied on. For example, "where a plaintiff has equal information of certain knowledge as the defendant, he has no right to rely upon defendant's statements." *Andrew v. Baird*, 221 Iowa 83, 93, 265 N.W. 170, 175 (1936). Moreover, the recipient of a fraudulent representation is "required to use his senses, and cannot recover if he blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Restatement (Second) of Torts § 541, Comment *a* (1971). *See* W. Prosser, Law of Torts § 108, at 718 (1971); Annot., 61 A.L.R. 492 at 513 (1929).

 We reject a rule, however, which would impose an objective standard of ordinary care on plaintiffs in fraud actions. Such a standard would be "clearly inconsistent with the general rule that mere negligence of the plaintiff is not a defense to an intentional tort." W. Prosser, Law of Torts § 108, at 716 (4th ed. 1971). Moreover, such a rule would not take into account "the effect which the representation is intended to have upon the plaintiff's mind." *Id.* This court noted on a prior occasion that "[t]he trend of recent cases is toward the doctrine that a vendor cannot shield himself from liability by asking the law to condemn the credulity of the purchaser." *Christy*, 255 Iowa at 606, 123 N.W.2d at 410. In keeping with this trend and in reaffirmation of *Sutton*, we hold that the test for determining whether a party to a transaction has a right to rely on representations of the other is not whether a reasonably prudent person would be justified in relying on such representations but rather, whether the complaining party, in view of his own information and intelligence, had a right to rely on the representations. This subjective standard depends not on what an ordinarily prudent person reasonably would do to protect his or her interests, but upon what the *complaining party* reasonably could be ex-

pected to do. Decisions from other jurisdictions in accord with this view include *Winn v. McCulloch Corp.*, 60 Cal.App.3d 663, 671, 131 Cal.Rptr. 597, 601 (1976) ("Negligence in reliance upon a misrepresentation is not a defense where the representation was intentionally made to induce reliance upon it."); *Blynn v. Ralbag*, 201 So.2d 611, 613 (Fla.App.1967); *Bergman & Lefkow Insurance Agency v. Flash Cab Co.*, 110 Ill. App.2d 415, 429, 249 N.E.2d 729, 736 (1969); *Gonderman v. State Exchange Bank, Roann*, 166 Ind.App. 181, 190, 334 N.E.2d 724, 729 (1975) ("[T]he requirement of reasonable prudence in business transactions is not extended so as to permit an intentional fraud perpetrated upon the unwary."); *Wolf v. Brungardt*, 215 Kan. 272, 283, 524 P.2d 726, 735 (1974); *Public Finance Corp. v. Scribner*, 159 Me. 150, 152–53, 189 A.2d 368, 369 (1963); *Judson v. Peoples Bank & Trust Co.* 25 N.J. 17, 27, 134 A.2d 761, 766 (1957); *Crofford v. Bowden*, 311 S.W.2d 954, 956 (Tex.Civ.App.1958).

Instruction 8 imposes on fraud claimants the standard of care which this court rejected in *Sutton* and which we now refuse to apply. By requiring that the representations be of such a nature that "a person of common and ordinary prudence would or should have relied upon" them, the instruction stated a rule which would allow a jury to find for a defendant who misstated a material fact with intent to deceive an unwary purchaser. We do not believe the requirement of reasonable prudence in business transactions should be extended that far.

We return the case to district court for retrial.

REVERSED AND REMANDED.