**Doug HOLLIDAY, Janet Holliday and Wendel Holliday, Appellants,**

v.

**RAIN AND HAIL L.L.C., Rain and Hail Insurance Services, Inc., and Cigna Property and Casualty Insurance Company, Appellees.**

No. 02–0512.

Supreme Court of Iowa.

Dec. 17, 2004.

Andrew B. Howie and Michael P. Mallaney of Hudson, Mallaney & Shindler, P.C., Des Moines, for appellants.

Frank W. Pechacek, Jr., and Bruce B. Green of Willson & Pechacek, P.L.C., Council Bluffs, for appellees.

LAVORATO, Chief Justice.

Insureds under multiple peril crop insurance policies appeal from adverse ruling by the jury regarding a breach of contract claim against its insurers and from an adverse ruling by the district court on their motion to amend the pleadings. The insurers cross-appeal from the district court's entry of judgment in favor of the insureds on the insurers' counterclaim. We affirm on the appeal and reverse on the cross-appeal. We remand with directions.

## I. Background Facts.

The jury could find the following facts.

In 1998 Doug Holliday, Janet Holliday, and Wendel Holliday (hereinafter collectively referred to as the Hollidays) farmed a number of acres in several southern Iowa counties in which they raised corn and soybeans. Rain and Hail L.L.C. (Rain and Hail) is the managing general agent for CIGNA Property and Casualty Insurance Company (CIGNA). (Hereinafter we refer to Rain and Hail and CIGNA collectively as Rain and Hail unless otherwise indicated.) Rain and Hail issues and services federal crop insurance policies under the authority of the Federal Crop Insurance Act through federally reinsured "Multiple Peril Crop Insurance" policies. The policies were issued pursuant to a standard reinsurance agreement with the Federal Crop Insurance Corporation (FCIC). The FCIC is the governmental

agency charged with implementing the federal crop insurance program, see 7 U.S.C.A. § 1503 (West 1999), in which the Hollidays were participating.

Under this federal program, the FCIC pays Rain and Hail for servicing crop insurance policies issued to American farmers and subsidizes a portion of each farmer's premium. The FCIC also pays a portion of each farmer's loss. The policies guarantee that participating farmers will earn a specific amount of revenue on their insured farms by guaranteeing farmers will obtain certain yields, that is, production on their insured farms. The yield guarantees are based either on average county yields or the participating farmer's actual yield history.

If a farmer relies on actual yields, the farmer must maintain and certify the farmer's past yields. The farmer certifies the actual yields on "production reports." Insurers use these certified yields on the production reports to determine the amount of each farmer's coverage for the upcoming crop year. To the extent certified yields are inaccurate, the coverage is misstated.

In addition to production reports in which a participating farmer certifies the farmer's past yields, such farmer must also certify planting dates in "acreage reports." Similar to past yields, planting dates also affect the amount of insurance coverage. To obtain full coverage, a participating farmer must plant crops by the "final plant date." If a participating farmer does not plant by the final plant date, insurance coverage is reduced one percent for each day following the final plant date. Except for certain exceptions not applicable here, after twenty-five days there is no coverage.

During the 1998 planting season, the Hollidays had yet to harvest their 1997 crops. Some of those crops remained un-harvested into the summer and fall of 1998. Crops on four of the Hollidays' farms in Wayne County that were planted in 1997 were never harvested in 1997. Nor did the Hollidays plant crops on those farms in 1998. Notwithstanding these facts, in March 1998 the Hollidays certified 1997 yields on two of these farms although they did not harvest crops on those farms and made no appraisals of their yields.

In June 1998, the Hollidays submitted acreage reports in which they certified their 1998 planting dates. In these reports, the Hollidays certified that they had planted crops on the Wayne County farms when in fact they had not done so. In addition, testimony from eyewitnesses disputed the planting dates certified by the Hollidays on eight other farms.

The FCIC asked Rain and Hail to investigate the Hollidays' 1997 and 1998 activities. At about the same time, the federal government audited the Hollidays' prior crop year policies and concluded: (1) the Hollidays' actions were fraudulent, (2) they had received indemnities to which they were not entitled in prior years, and (3) their approved yields were overstated.

In October 1998, Rain and Hail notified the Hollidays of the discrepancies between the Hollidays' certified plant dates and the eyewitnesses' accounts. That prompted the Hollidays to submit thirty-one "corrected planting dates" to Rain and Hail. Even then, the corrected planting dates were inconsistent with the eyewitnesses' accounts. Moreover, the corrected planting dates did not match time cards kept by the Hollidays' employees.

The Hollidays were never able to produce records to support their claim of a potential yield loss they reported to Rain and Hail for the 1998 crop year. Nor did the Hollidays' notice of loss identify the

specific farms on which it suspected a yield loss.

Eventually, Rain and Hail voided the Hollidays' 1998 policies covering the 1998 crop year in accordance with paragraph twenty-seven of the insurance policies, a provision that allows the insurer to void the policies when the insured "intentionally conceal[s] or misrepresent[s] any material fact relating to [the policies]." Rain and Hail incurred expenses in excess of $80,000 in investigating the Hollidays' activities and voiding their policies.

## II. Proceedings.

In February 2000, the Hollidays sued Rain and Hail for breach of contract and bad faith in connection with Rain and Hail's action in voiding the 1998 policies. The Hollidays also sought a declaratory ruling that the 1998 policies were in full force and effect.

Rain and Hail's answer raised several affirmative defenses, one of which was that the policies were void because of the Hollidays' alleged "intentional concealment and/or misrepresentation of one or more material facts as prohibited by the terms of [the Hollidays'] policies." Rain and Hail also counterclaimed, requesting (1) premium underpayments and indemnity overpayments for the 1995 and 1996 crop years and (2) twenty percent of the premium for the 1998 crop year pursuant to the policies to offset Rain and Hail's costs in servicing them.

Thereafter, pursuant to leave of court, the Hollidays amended their petition, adding a claim for (1) breach of contract for loss and indemnity payments under the 1999 policies, (2) conversion of the 1999 indemnity payments, and (3) duress.

Later, the district court entered a scheduling order setting trial for February 5, 2002 and closing pleadings as of December 5, 2001. The court also granted Rain and Hail's motion for summary judgment on the Hollidays' claim for duress.

Several weeks before trial, the Hollidays dismissed their breach of contract claim for indemnity payments under the 1999 policies. A short time later, Rain and Hail filed a motion in limine. In that motion, Rain and Hail maintained that the Hollidays and Rain and Hail had admitted that the 1999 policies were with CIGNA. For that reason, Rain and Hail contended, the Hollidays should not therefore be permitted to introduce evidence on their conversion claim that Agri–General Insurance Company (Agri–General) actually issued the 1999 policies rather than CIGNA.

On the day before trial, the Hollidays moved to amend the petition. The Hollidays alleged that they had erred in previously alleging that the 1999 policies were with CIGNA rather than with Agri–General and that they learned of the mistake through discovery. Rain and Hail resisted, and the district court denied the Hollidays' request to amend.

The case proceeded to trial before a jury. The district court sustained Rain and Hail's motion for directed verdict on the Hollidays' conversion claim. The Hollidays objected to the district court's instruction on Rain and Hail's burden of proof concerning the misrepresentation issue. The Hollidays argued that the court should instruct the jury that Rain and Hail's burden of proof on this issue should be by a preponderance of clear, satisfactory, and convincing evidence rather than by a preponderance of evidence. The court overruled the objection. The court then submitted the Hollidays' original breach of contract claim and their bad-faith claim, with the following special interrogatory:

Question: Did the plaintiffs, or someone assisting them, intentionally misrepresent material facts relating to the

plaintiffs' 1998 Multi–Peril Crop Insurance policies?

Answer "yes" or "no".

Answer: ——

[If your answer is "no", proceed to Verdict Form 1. If your answer is "yes", do not answer any questions on Verdict Form 1 or Verdict Form 2.]

The jury answered the interrogatory in the affirmative, and thereafter the district court entered judgment in favor of Rain and Hail on the breach of contract, bad faith, and declaratory judgment claims.

As to Rain and Hail's counterclaim for underpayment of premiums and overpayment of indemnity payments, Rain and Hail voluntarily dismissed their claims for the 1995 and 1996 crop years during trial, leaving only a counterclaim for twenty percent of the premium on the 1998 policies. Because the parties agreed that this latter claim presented only a question of law for the court, the district court did not submit the counterclaim to the jury. Ruling against Rain and Hail on this issue, the court dismissed the counterclaim.

The Hollidays appealed and Rain and Hail cross-appealed.

## III. Issues.

The Hollidays raise two issues on appeal. The first issue is whether the jury instructions incorrectly stated the law by referring to Rain and Hail's burden of proof on its affirmative defense of misrepresentation as a preponderance of the evidence rather than a preponderance of clear, convincing, and satisfactory evidence. The second issue the Hollidays raise is whether the district court erred by not granting their motion for leave to amend petition filed the day before trial.

The issue Rain and Hail raises on the cross-appeal is whether the district court erred by dismissing its counterclaim.

## IV. Scope of Review.

■■■ We review claims of errors in instructing the jury for correction of errors at law. *Greenwood v. Mitchell*, 621 N.W.2d 200, 204 (Iowa 2001). We review a ruling on a motion for leave to amend a petition for abuse of discretion. *Bailiff v. Adams County Conference Bd.*, 650 N.W.2d 621, 626 (Iowa 2002).

As mentioned, the parties agreed that whether the counterclaim should be dismissed was a question of law for the court. So our review is for correction of errors at law. Iowa R.App. P. 6.4.

## V. Burden of Proof Instruction.

The district court's instruction on Rain and Hail's affirmative defense stated in relevant part:

The defendants voided the plaintiffs' 1998 Multi–Peril Crop Insurance policies.... In connection with those insurance policies, you must determine whether the defendants have *proved* each one of the following:

1. That the plaintiffs, or anyone assisting them, misrepresented facts; and

2. That the misrepresentations were intentionally made; and

3. That the misrepresentations were material.

If the defendants have *proved* each of the above, you will answer the Special Interrogatory "Yes". If the defendants have failed to *prove* each of the above, you will answer the Special Interrogatory "No".

(Emphasis added.)

■■■ In another instruction, the district court instructed the jury that "[w]henever a party must prove something, they must do so by the preponderance of the evidence." The instruction defines a prepon-

derance of evidence as evidence "that is more convincing than opposing evidence" and states that "[t]o prove something by the preponderance of the evidence is to prove that it is more likely true than not true."

Taking these two instructions together, the jury could find for Rain and Hail on its affirmative defense if it found Rain and Hail proved its defense by a preponderance of the evidence. The Hollidays contend the court should have instructed the jury that Rain and Hail had to prove its affirmative defense by a preponderance of clear, satisfactory, and convincing evidence rather than by a preponderance of evidence. And the district court's failure to so instruct the jury was a material misstatement of the law and for that reason was prejudicial, warranting reversal. For reasons that follow, we disagree.

 Our law is clear that all the elements of common-law fraud must be established by a preponderance of evidence that is clear, satisfactory, and convincing. *Lockard v. Carson,* 287 N.W.2d 871, 874 (Iowa 1980). The reason for this heavier burden is to give deference to the presumption of fair dealing. *Id.* " '[C]lear and satisfactory' refers to the *character or nature of the evidence,* whereas 'preponderance' of the evidence is a *quantitative* measure." *Id.*

What Rain and Hail had to prove here was not common-law fraud for damages. Rather it had to prove a contractual defense, pursuant to paragraph twenty-seven of the policy, to void the policies based simply on intentional concealment or misrepresentation of any material fact relating to the policies. Thus, all that Rain and Hail had to prove was either one of two elements: intentional concealment or misrepresentation; there was no language indicating that Rain and Hail had to prove all the elements of common-law

fraud. *See Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 400 (Iowa 2001) (listing elements necessary to establish common-law fraud claim: "(1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages").

In its ruling on the Hollidays' motion for new trial, the district court addressed the issue squarely and in accord with our reasoning here:

> The plaintiffs urge that the Court erred in instructing the jury regarding the burden of proof required of the defendants in their affirmative defense. The plaintiffs are correct that the burden of proof in a cause of action for damages sustained as a result of fraud is proof by a preponderance of the clear and convincing evidence. However, there was no claim for damages for fraud submitted to the jury in this case.

> In this case, the cause of action was for breach of contract. The burden of proof on the plaintiffs was to prove a breach of contract by a preponderance of evidence. Part of the proof required of the plaintiffs was the existence of a contract of insurance, insuring against the plaintiffs' losses. The defendants raised the affirmative defense that, pursuant to the terms of the contract, there was no policy and no coverage for the plaintiffs' losses. The same burden of proof fell upon the defendants in their affirmative defense. The defendants were required to prove, by a preponderance of the evidence, that pursuant to its

terms, there was no policy in effect and hence no coverage. In this case, the defendants, to prove their affirmative defense, were required to prove that the plaintiffs intentionally misrepresented material facts. The insurance policies provided that they were void if those facts were proved. The fact that the policy language included some, but not all, of the elements of a cause of action for fraud, did not however, require the defendants to prove their entitlement to a judgment for damages for fraud in order to prove their defense.

The district court did not err in instructing the jury on Rain and Hail's burden of proof regarding its affirmative defense.

## VI. Motion to Amend.

■ In their original amended petition, the Hollidays asserted a claim for conversion against Rain and Hail because it had set off monies allegedly due the Hollidays under the 1999 policies against monies for premium underpayments and indemnity overpayments that Rain and Hail claimed to be due to it under the 1995 and 1996 policies. In asserting the conversion claim, the Hollidays alleged that for the 1999 crop year, they had policies with CIGNA when in fact the policies were with Agri–General. Rain and Hail's answer admitted the policies were with CIGNA. The day before trial, the Hollidays moved to amend their petition to correct the factual error. The district court denied the Hollidays' motion. The Hollidays contend the district court abused its discretion in denying their motion.

We conclude, for two reasons, that the district court did not abuse its discretion in denying the motion. First, as the district court found, the amendment would inject a new issue into the case—whether Rain and Hail had a right of setoff against funds due under another insurer's policy. This issue was not raised in the original pleadings

and allowing the amendment would unduly prejudice Rain and Hail. *See Atl. Veneer Corp. v. Sears,* 232 N.W.2d 499, 503 (Iowa 1975) (stating "an amendment is not permissible which will substantially change the issue"). Moreover, in addition to adding a new issue, the amendment would require in our opinion the addition of another party—Agri-General.

■ Second, as the district court found, the motion was untimely. The pretrial order closed pleadings as of December 5, 2001. The district court found that the information the Hollidays needed to correct the factual error was available to them as early as November 2001, but they waited until the day before trial to file their motion to amend. *See Bennett v. City of Redfield,* 446 N.W.2d 467, 474–75 (Iowa 1989) (finding district court did not abuse its discretion in denying as untimely motion to amend petition that "would have substantially changed the issues of the suit"; motion to amend was filed sixteen months after suit was commenced, twenty days before trial date, and after amendment deadlines established in court's scheduling order).

## VII. The Counterclaim.

■ As mentioned, Rain and Hail sought twenty percent of the premium for the voided 1998 policy. The parties agreed the counterclaim presented a legal question for the court. The court found that the liquidated damage provision in paragraph twenty-seven of the policies was discretionary, and for that reason Rain and Hail had to make an election and demand for payment before it had any right of action for the liquidated damages. Because Rain and Hail made no such election and demand before filing its counterclaim, the court concluded Rain and Hail had no cause of action for the damages at the time

it filed the counterclaim. The court therefore entered judgment in favor of the Hollidays on the counterclaim.

Rain and Hail contends the court erred in reaching its conclusion, and we agree. Paragraph twenty-seven of the policies provides in relevant part:

> (b) Even though the policy is void, you *may* still be required to pay 20 percent of the premium due under the policy to offset costs incurred by us in the service of this policy. If previously paid, the balance of the premium will be returned.

(Emphasis added.)

As the district court found, this provision is discretionary because of the use of the word "may" in connection with the insured's liability for the liquidated damages. *See* 17A C.J.S. *Contracts* § 323, at 347–48 (1999) (stating that when construing contracts, "the word 'may' ordinarily is regarded in a permissive, rather than in a mandatory, sense"). However, there is no language in this provision requiring Rain and Hail to first make an election and demand before filing suit. In the absence of such language, we think the general rule is that no such election and demand is necessary before filing suit. *Coffin v. Younker*, 196 Iowa 1021, 1026, 195 N.W. 591, 593 (1923); *Wyatt v. Bailey*, 1 Morris 522, 523 (Iowa 1845); 25 C.J.S. *Damages* § 229, at 630 (2002). Filing suit, as was done here, constitutes the demand. *Coffin*, 196 Iowa at 1026, 195 N.W. at 593; *Wyatt*, 1 Morris at 523.

## VIII. Disposition.

Because we find that the district court correctly instructed the jury on the burden of proof regarding Rain and Hail's affirmative defense and did not abuse its discretion in denying the Hollidays' motion to amend, we affirm on these issues. However, because the district court erred in entering judgment in favor of the Hollidays on the counterclaim, we reverse the judgment and remand to allow the district court to decide the issue on the record before it in conformity with the conclusions we have reached.

**APPEAL AFFIRMED; REVERSED AND CASE REMANDED WITH DIRECTIONS ON CROSS–APPEAL.**