Kelly HAMMES and Jesse Hammes,
Plaintiffs–Appellants,

v.

JCLB PROPERTIES, LLC, Christopher Flesher and Jane Flesher,
Defendants–Appellees.

No. 07–1815.

Court of Appeals of Iowa.

Dec. 17, 2008.

Troy A. Howell of Lane & Waterman, LLP, Davenport, for appellant.

Candy K. Pastrnak and Tara Moffitt of Pastrnak Law Firm, P.C., Davenport, for appellees.

Heard by SACKETT, C.J., and EISENHAUER and DOYLE, JJ.

EISENHAUER, J.

Plaintiffs, Kelly and Jesse Hammes, bought a single family residence from defendant JCLB Properties, LLC. The members of JCLB are defendants Christopher and Jane Flesher. The Fleshers had lived in the residence since 1994 and transferred their ownership of the residence to JCLB in April 2004. The residence's northern wall contains two window wells with glass block windows. Christopher stated in 2003, both window wells filled with water like an aquarium. Christopher then contacted his northern neighbor about building a retaining wall between the properties to help divert water coming from the neighbor's property into the Flesher basement. After gaining the neighbor's approval, Christopher built the retaining wall, put drainage tile along the bottom of the wall to divert water to the lot's rear yard, and bought the northern neighbor a downspout extension and asked him to always keep it on. Additionally, Christopher dug a GI trench to drain the water out between the two houses. After water had entered their basement, but before the sale of the property, the Fleshers pulled out the northwest wall cabinets and dried out the area. They also reinstalled the cabinets, replaced the basement carpet, and painted.

In May 2005, during the sale process, Christopher signed a residential property seller disclosure form on behalf of JCLB and claimed no known water or other problems existed regarding the basement or foundation, there was no known settling, flooding, drainage, or grading problems, and there was no known structural damage.

After plaintiffs moved into the house, during rainstorms water entered the basement and soaked the northwest corner. The carpet around the edge of the northwest walls would become saturated about six feet into the room. Additionally, there were times when the drywall on the north basement wall would streak with moisture. The built-in cabinets on the west basement wall were delaminating and sustained water damage, especially the cabinets closer to the north wall "where it's always wet." Plaintiffs filed suit and their claims relevant to this appeal are: (1) a common law claim for fraudulent misrepresentation/nondisclosure against all defendants; and (2) a statutory claim for damages under Iowa's Real Estate Disclosure Act, Iowa Code chapter 558A (2005), against defendant JCLB.

After a bench trial, the district court ruled in favor of defendants. Plaintiffs appeal contending the court erred in: (1) requiring plaintiffs to prove reliance as an element of their statutory claim under

Iowa Code chapter 558; (2) finding plaintiffs were not justified in relying on the deceptive disclosure statement; (3) concluding plaintiffs failed to prove proximate cause; and (4) holding plaintiffs failed to prove the amount of their damages.

We review this law action for correction of errors of law. *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006). The trial court's findings of fact are binding if supported by substantial evidence. Iowa R.App. P. 6.14(6)(a).

## I. Iowa Code Chapter 558A—Reliance.

Iowa's Real Estate Disclosure Act requires persons interested in transferring real estate to deliver a written disclosure statement to prospective buyers. Iowa Code § 558A.2. The statutory disclosure statement "shall include information relating to the condition and important characteristics of the property and structures located on the property." *Id.* § 558A.4(1). Liability is authorized in section six, which states:

A person who violates this chapter shall be liable to a transferee for the amount of actual damages suffered by the transferee, but subject to the following limitations:

(1) The transferor ... shall not be liable ... for the error, inaccuracy, or omission in information required in a disclosure statement, unless that person has actual knowledge of the inaccuracy.

Iowa Code § 558A.6(1).

The defendants testified their water damage was a one-time only event in 2003 when water came into the basement through the window wells. However, a prospective purchaser testified he discussed a puddle of water in the northeast uncarpeted basement closet with Christopher during a house inspection.

Christopher testified he told Jesse about the one-time water incident and explained why the retaining wall and tile was on the house's north side. Jesse testified Christopher verbally told him during the sale process that the basement did not have water problems.

The district court ruled the defendant was a transferor who provided a disclosure statement in which "the representations concerning water problems related to the basement and foundation as well as the representations concerning flooding, drainage, or grading problems ... were false." In ruling the defendants had actual knowledge of the falsity of the disclosure statement's representations, the court stated:

The defendants' claims do not strain credulity, they rupture and destroy it. Having listened to their testimony, having observed their demeanor throughout the trial, and having compared their testimony with the physical and documentary evidence, the court concludes that the testimony of the defendants is entitled to little, if any, credibility. However, the court does find the inanity of their claims regarding the disclosure requirements to be clear satisfactory and convincing proof of their intent to deceive the purchasers ... concerning the water problems associated with the property.

The court denied relief to the plaintiffs, however, because it was "unable to conclude the plaintiffs reasonably relied on the false representations."

■ On appeal, the plaintiffs rely on *Jensen v. Sattler*, 696 N.W.2d 582 (Iowa 2005), and argue the district court erred by requiring the plaintiffs to prove the fraudulent misrepresentation element of "reliance" as a part of their statutory claim. We agree. The *Jensen* court recognized the "independent nature of chap-

ter 558A and common law claims" and held "proof of fraud" is not required for recovery under chapter 558A. *Id.* at 587–88. The court stated the statutory claim and a claim for fraudulent nondisclosure "are distinct causes of action." *Id.* "Iowa Code section 558A.6 only requires the plaintiff to show *actual knowledge* of a problem that was required to be disclosed, not the elements of fraud.... The causes of action have different elements." *Id.* at 588. Therefore, a plaintiff can "establish a violation of the statute, even if he did not prove his common law fraud claim." *Id.* In sum, we agree the court erred in requiring "reliance" as an element of the plaintiffs' statutory burden of proof. Requiring proof of reliance is contrary to the statute's plain language and to the court's holding in *Jensen.*

## II. Fraudulent Misrepresentation/Non-disclosure—Reliance.

■■■■ To recover on their fraud claim, the plaintiffs had to prove justifiable reliance on the defendants' representations. *Lockard v. Carson,* 287 N.W.2d 871, 878 (Iowa 1980). Under Iowa's subjective test, the issue is whether the plaintiffs, in view of their own information and intelligence, had a right to rely on the representations. *Id.* In adopting the subjective standard, the *Lockard* court noted: "The trend of recent cases is toward the doctrine that a vendor cannot shield himself from liability by asking the law to condemn the credulity of the purchaser." *Id.* Examples of misrepresentations that may not be justifiably relied upon include situations where a plaintiff has equal knowledge or situations where falsity can be discovered by a cursory examination. *Id.* The district court ruled:

> Given the experience of the plaintiffs in the real estate field, they were not justified in relying on the representations made by the defendants. The topo-

graphical and structural features of the property and residence should have placed the experienced real estate purchaser, which the plaintiffs are, on greater inquiry notice concerning the potential for water problems in the basement of the residence.

On appeal, the plaintiffs argue the fact Jesse was a realtor for two years and a landlord/property manager for seven makes it even more appropriate and justifiable for them to rely on JCLB's disclosure statement because they were aware of JCLB's disclosure obligations under Iowa law and understood JCLB was legally obligated to disclose known problems with the home.

After our review of the record, we agree the court erred. To rule plaintiffs did not justifiably rely on a disclosure statement that is legally required for the protection of purchasers defies logic and is contrary to the intent and spirit of chapter 558. There was no evidence the plaintiffs had equal knowledge even though they inspected the property several times instead of doing a cursory inspection. In addition, Christopher verbally told Jesse the basement had no water problems and the defendants replaced the water-damaged carpet and painted after water had entered the basement. JCLB's realtor testified he was in the basement ten to twenty times during the listing and saw no evidence of water damage/issues. Accordingly, there were no physical signs inside the basement before the purchase to alert the plaintiffs to look askance at either the disclosure statement or Christopher's oral representations. The court's conclusion the plaintiffs did not justifiably rely on the representations made by the defendants is not supported by substantial evidence. The court's conclusion is rebutted by the physical appearance of the basement, Christo-

pher's oral representations, and JCLB's written disclosure statement.

## III. Proximate Cause.

■ The plaintiffs produced evidence showing their northern carpet had been saturated during rainstorms; drywall and wooden wainscot on the north wall was damaged; and the wooden cabinets in the northwest portion of the basement were discolored and delaminated. An expert witness testified to the basement's mold issues. The district court ruled:

The water problems experienced by the defendants that they concealed from the plaintiffs appear to be unrelated to the current ongoing water infiltration and mold infestation problems that the plaintiffs are experiencing. Therefore, there is no proximate cause relationship between the defendants' false representations and any damages suffered by the plaintiffs.

After reviewing the record, we conclude the court's findings are not supported by substantial evidence and the plaintiffs have established proximate cause. The plaintiffs hired Missman Stanley and Associates to evaluate the moisture and mold issues in the basement. The basement has a laundry room in the southeast corner and the sewer floor drain had backed up twice before the Missman expert's examination. The first backup caused standing water in the laundry room and saturated three to four feet of the south rec room carpet just outside the laundry room. The south wall of the rec room showed water damage, but the expert found no present moisture and only dry (not currently growing) mold. The expert attributed the damage to the south interior rec room walls to the sewer backup. The expert witness testified the northern wall had both high present moisture readings and active mold and the built-in cabinets starting on the northwest- ern corner and covering a portion of the western wall also had moisture and active mold. The expert testified this was not caused by sewer problems and the probable cause was foundation leakage. Finally, the expert's report concluded the "probable current source of the elevated mold spore concentrations identified in the basement recreation room air sample is mold from the north basement wall and the built-in cabinet unit." However, at trial the expert testified the mold in the basement air sample could also have been caused by the mold on the rec room south wall.

Therefore, the record shows the northern basement area of the residence sustained water infiltration prior to purchase that the defendants attempted to remedy through numerous actions taken on the north side of the property. Subsequently, the northern basement area of the residence continued to sustain water infiltration after plaintiffs' purchase. It is clear the northern side of the residence has water issues and the defendants' failure to disclose their water problem and their remedial efforts caused the plaintiffs to suffer similar water damage in the same part of the basement. *See Sedgwick v. Bowers,* 681 N.W.2d 607, 611 (Iowa 2004) (finding causation where the surface water entered the house at different places for the buyer and the seller).

Additionally, the expert specifically concluded the sewer backups in the southeast basement corner were not a cause of the water damage and mold issues in the basement's north wall and northwest corner cabinets. Accordingly, the plaintiffs have established proximate cause.

## IV. Damages.

■ Kevin Fitzwater testified for the plaintiffs and provided an estimate of the cost to repair the basement and remediate

the mold problems. The district court ruled the plaintiffs' proof concerning damages is not credible. The plaintiffs argue Fitzwater's testimony is sufficient because damages should not be denied merely because the amount is difficult to ascertain so long as the fact that some damages were sustained is evident. *See Metropolitan Transfer Station, Inc., v. Design Structures, Inc.,* 328 N.W.2d 532, 538 (Iowa Ct.App.1982). Plaintiffs also claim they should not be penalized for being financially unable to complete the remediation and repair work with their own money prior to trial.

In Iowa, the plaintiff bears the burden of establishing a claim for damages with some reasonable certainty and for demonstrating a rational basis for determining their amount. *Conley v. Warne,* 236 N.W.2d 682, 687 (Iowa 1975). However, Iowa courts "take a broad view in determining the sufficiency of evidence of damages." *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 403 (Iowa 1982). Iowa also recognizes a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. *Olson v. Nieman's Ltd.,* 579 N.W.2d 299, 309 (Iowa 1998). As the Iowa Supreme Court noted in *Northrup v. Miles Homes, Inc.,* 204 N.W.2d 850, 857 (Iowa 1973):

> If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.

Thus, some speculation is acceptable. *Olson,* 579 N.W.2d at 309. Consequently, while a loss may be hard to ascertain "with preciseness and certainty, the wronged party should not be penalized because of that difficulty." *Id.*

Plaintiffs' mold expert provided a report detailing the "tasks to identify and eliminate building materials contaminated with mold." The lengthy list of tasks reveals mold remediation will be a time-consuming process. For example, plaintiffs are cautioned not to replace the removed drywall until "significant time has passed to allow for observation of the wall during/after a heavy rainstorm." Fitzwater's estimate was based on a square foot cost of reconstruction and a square foot cost "to deconstruct" and was applicable to the entire basement. His written report showed a charge of $18,180 for mold remediation, $5200 for water proofing, $7200 for grading and tiling, and $33,090 for living spaces reconstruction. While this is a close question, when we take the mandated "broad view" of the damages evidence while remembering some speculation is allowed, we are convinced the record does provide a basis from which the amount of actual damage can be inferred or approximated. There is no question water caused actual damage to the northern and northwestern portion of the basement after the plaintiffs purchased the home. Although more detail would have been preferable, the district court's findings are not supported by substantial evidence given the latitude Iowa plaintiffs are allowed when there is no question actual damages have been sustained. Fitzwater testified his estimate was based on adding a percentage of profit to various subcontractors' work for repairing foundations, waterproofing, and grading and tiling. Further, Fitzwater testified his company regularly used subcontractors for this work and he was familiar with the costs the subcontractors charged his company.

While Fitzwater's estimate is based on the entire basement square footage, on remand the district court should adjust the damages awarded by: (1) deducting an

appropriate amount for the southern portion of the basement deconstruction and remodeling necessitated by the sewer back-ups and not caused by the undisclosed water problem; (2) deducting an appropriate amount for any basement bathroom deconstruction and remodeling; and (3) adjusting the mold remediation damages if the court deems it necessary. These steps will allow the court, while admittedly using some speculation, to arrive at a reasonable approximation of damages. *See Metropolitan Transfer*, 328 N.W.2d at 538 (holding defendants "should not escape liability on the ground that the measure of damages attributable to them is uncertain").

Additionally, on remand the district court should consider and rule on plaintiffs' issue of punitive damages under their common law claim.

**REVERSED AND REMANDED ON DAMAGES.**