# IN THE COURT OF APPEALS OF IOWA

No. 21-1764
Filed December 7, 2022


**MICHAEL BROWNE,**
Plaintiff-Appellant,

**vs.**

**CHRISTOPHER ROTH and DEBRA ROTH,**
Defendants-Appellees.
_____


Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.


Michael Browne appeals the district court's rejection of his statutory and breach-of-contract claims against Christopher and Debra Roth for failure to disclose material defects in their written disclosure statement. **AFFIRMED.**


Adam J. Babinat of Redfern, Mason, Larsen & Moore, P.L.C., Cedar Falls, for appellant.

Patrick C. Galles of Correll, Sheerer, Benson, Engels, Galles & Demro, P.L.C., Cedar Falls, for appellees.


Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

Michael Browne bought a Cedar Falls home from Christopher and Debra Roth, with the intent to "gut" and remodel it before moving in. While he was stripping the basement walls, he discovered mold and moisture. Browne stopped his demolition work and never moved into the home.

Browne sued the Roths for failure to "disclose any problems concerning water seepage . . . [and] any known fungus or mold issues."[1] He claimed the Roths breached statutory disclosure requirements as well as the real estate purchase contract incorporating those requirements.[2]

A few months after suit was filed, a basement pipe burst. Browne discovered the pipe on "one of [his] checkups." Water was "[s]praying against the drywall" and running to the floor. Browne did "not know" how long the water had been running before he discovered it.

Years passed. The home remained unoccupied from the time of purchase in mid-2016 through trial five years later. Following trial, the district court ruled in favor of the Roths. In response to a posttrial motion, the court enlarged its findings and reaffirmed its conclusions.

On appeal, Browne contends "the Roths had actual knowledge of a mold and moisture problem," they "failed to disclose anything which would have informed [him] further investigation was warranted," and "[t]he district court erred by concluding the Roths did not violate their [statutory] disclosure duty" and by

---

[1] Browne alleged other nondisclosures that are not at issue on appeal.
[2] Brown additionally raised negligent and fraudulent-misrepresentation claims that he voluntarily dismissed with prejudice.

rejecting his contract claim. He concedes the breach-of-contract claim rises or falls on the outcome of the statutory claim. Accordingly, we will confine our discussion to the statutory claim.

Iowa Code chapter 558A (2021) requires a prospective seller to "deliver a written disclosure statement to" a prospective buyer. The statement must "include information relating to the condition and important characteristics of the property . . . including significant defects in the structural integrity." Iowa Code §§ 558A.2(1), 558A.4(1)(a); Iowa Admin. Code r. 193E—14.1(6) (sample statement); *Putman v. Walther*, 973 N.W.2d 857, 863 (Iowa 2022). A person who violates the disclosure requirement is ordinarily liable for actual damages, but "shall not be liable . . . for the error, inaccuracy, or omission in information . . . unless that person has actual knowledge of the inaccuracy, or fails to exercise ordinary care in obtaining the information." Iowa Code § 558A.6(1).

We begin with the Roths' information on water seepage. The district court found that the Roths saw waviness in "the beadboard located in the northeast and southeast corner of the basement." They "removed the beadboard, and the wallboard behind the beadboard was damp." They removed the wallboard and observed black mold on the wallboard, flooring strips, and the concrete block foundation wall." They "cleaned up the mold, caulked, replaced a piece of wallboard in each corner with mold-resistant sheetrock, and returned the beadboard to its original position." The Roths do not dispute these findings. The findings are supported by substantial evidence. *See Hammes v. JCLB Props., LLC*, 764 N.W.2d 552, 555 (Iowa Ct. App. 2008) (setting forth standard of review).

We turn to whether the Roths disclosed the information to Browne. The answer is unequivocally "No." They checked "No" to the question about "[a]ny known water, seepage or other problems"; "No" to the question about "[a]ny known fungus or mold"; "No" to the question about "[a]ny known modifications, remodeling, alterations, or repairs, etc., made without necessary permits or licensed contractors"; and "No" to the question about "[a]ny known physical problems." When they completed the form, they had actual knowledge of seepage and mold in the basement. Again, the Roths conceded as much. Because disclosure of the seepage, mold and remedial measures was statutorily required, the Roths violated the statute by failing to make the disclosures. *See Yeboah v. Emans*, No. 12-0900, 2011 WL 1453231, at *2 (Iowa Ct. App. Apr. 10, 2013).[3] We are left with the question of actual damages for the mold and water seepage.

The district court found "the mold problem in the basement of the residence had resolved at no cost to" Browne and "[t]his had occurred despite standing water being present on the floor of the basement for several years due to an unrelated bursting of a water pipe." The court concluded Browne "failed to prove any damages to remedy the undisclosed mold problem in the basement of the residence."

Substantial evidence supports the court's underlying findings. Browne testified, "The mold is gone." When pressed with the question, "There is no mold

---

[3] The district court found the Roths "thought they had taken care of the problem." The court of appeals was unpersuaded by a similar argument. *See Yeboah*, 2011 WL 1453231, at *3 (noting a "sunroom leak was a known problem that was repaired" and "[t]he sellers had an obligation to disclose the leak and the repair, notwithstanding their belief that the issue was resolved").

there anymore?" he responded, "The last time I was there, no. There was no mold." And when asked, "The mold is not an issue?" He responded, "No, sir." Seeking reconfirmation of this point, Browne's attorney inquired, "Are you asking the court for any damages related to any mold remediation you would have had to undertake?" Browne answered, "No sir." In light of his testimony, the district court did not err in concluding no actual damages were warranted on the statutory claim related to nondisclosure of mold.

We turn to Browne's requested damages for "water seepage repair." In its expanded posttrial findings, the district court found the "condensation problem" observed by the Roths "would be alleviated by the construction of energy walls." Because the City required these walls in connection with Browne's remodeling of the basement, the court determined Browne "incurred no additional costs as a result of [the Roths'] failure to disclose the moisture problem."

We discern a more fundamental problem with Browne's request for water-seepage damages—the Roths' lack of actual knowledge of widespread water seepage.[4] The district court credited the Roths' testimony concerning their knowledge of this seepage, finding (1) "[a]t no time did [they] notice water on the floor in the basement or was the basement carpet wet" and (2) the Roths "noticed

---

[4] The Roths point to their lack of knowledge and also argue the damages were not proximately caused by their nondisclosure. *See Putman*, 973 N.W.2d at 865 (evaluating a summary judgment record on a chapter 558A claim for "damages proximately caused by the misrepresentation"); *Hammes*, 764 N.W.2d at 558–59 (remanding for adjustment of a damage award under chapter 558A by "deducting an appropriate amount for the southern portion of the basement deconstruction and remodeling necessitated by the sewer back-ups and not caused by the undisclosed water problem"). We find it unnecessary to address the causation issue.

no additional moisture problems in the basement." Substantial evidence supports the court's findings.

Christopher Roth agreed he saw some discoloration on the wall but said the wall "was never wet or wet to the touch" and there was never any seepage problem in the house. Roth also saw no water on the basement floor. His testimony was consistent with Browne's testimony on this point. As Browne concedes on appeal, his home inspector did not detect water seepage and he "only learned of the mold and moisture issues . . . after he removed the drywall."

As for Browne's expert, he testified certain discoloration was indicative of "seepage through the basement walls," but his testimony was based on pictures taken in 2019, not 2016 when the house was sold. Significantly, he said he would expect to see water on the floor if there were seepage. In his words, water seepage "doesn't have anywhere else to go other than the floor—joint of the floor or out to the floor itself." While Browne's attorney attempted to rehabilitate him, his concession bolstered Roth's and Browne's testimony concerning the absence of water on the floor.

The district court was free to weigh the testimony and assign credibility as it saw fit. *See Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496, 519 n.3 (Iowa 2021) (deferring to district court's credibility findings in a contract case); *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996) ("The trier of fact . . . has the prerogative to determine which evidence is entitled to belief. The district court has a better opportunity than we do to evaluate the credibility of the witnesses. So we think factual disputes . . . are best resolved by the district court."). The court did just that in finding the Roths lacked actual knowledge of the

water seepage beyond the identified corners.  Without actual knowledge, the Roths could not be liable for actual damages.  Accordingly, the district court did not err in declining to award water seepage damages.

Having concluded the district court did not err in dismissing the statutory claim, we further conclude the court did not err in dismissing the breach-of-contract claim.

Browne seeks appellate attorney fees.  He notes that "the real estate purchase agreement provides for the recovery of . . . attorneys' fees in the event of a breach."  That type of language in a purchase agreement will not support an award of attorney fees for a chapter 558A violation unless the agreement required the sellers to make the statutory disclosures.  *See Hovden v. Lemke*, No. 19-0399, 2020 WL 2988531, at *4 (Iowa Ct. App. June 3, 2020) (noting the purchase agreement made "no provisions for attorney fees relating to chapter 558A or nondisclosures," precluding an award of attorney fees); *Payton v. Digiacomo*, No. 14-1453, 2015 WL 5285740, at *3 (Iowa Ct. App. Sept. 10, 2015) (concluding a checkmark indicating the attachment of a disclosure form to the purchase agreement was insufficient to incorporate "any term relating to the requirements of chapter 558A," precluding recovery of attorney fees); *cf. Johnson v. Baum*, No. 09-1340, 2010 WL 2757192, at *3 (Iowa Ct. App. July 14, 2010) (concluding language in the purchase agreement specifying a "legal duty to disclose [m]aterial [d]efects" incorporated the requirements of chapter 558A and was sufficient to trigger the attorney-fee provision).

This case is more like *Hovden* and *Payton* than *Johnson*.  The purchase agreement contains a check box to indicate whether the Chapter 558A disclosure

statement is attached and does not otherwise contain any language incorporating those disclosure duties into the contract. The remedies provision of the contract authorizes attorney fees for failure to "timely fulfill the terms of this agreement." Because the terms do not include the chapter 558 disclosures except by a check-box reference to the addendum, we conclude Browne was not authorized to obtain attorney fees even if he prevailed.

**AFFIRMED.**