# IN THE COURT OF APPEALS OF IOWA

No. 22-1977
Filed July 13, 2023

**SANDHU GROUP OF COMPANIES, INC.,**
    Plaintiff-Appellee,

**vs.**

**BLACKBIRD INVESTMENTS, LLC,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.


        A defendant appeals a breach-of-contract and motion-to-amend ruling.

**AFFIRMED.**


        Brandon M. Schwartz and Michael D. Schwartz of Schwartz Law Firm,

Oakdale, Minnesota, for appellant.

        Wesley T. Graham and Joseph G. Gamble of Duncan Green, P.C., Des

Moines, for appellee.


        Heard by Ahlers, P.J., Badding, J., and Doyle, S.J.*  Gamble, S.J., takes no

part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**AHLERS, Presiding Judge.**

This case centers on the Subway restaurant located in the Kaleidoscope building in downtown Des Moines. Subway Real Estate Corp. (SRE) is the tenant that rented the space from the owner of the property for operation of the restaurant. Sandhu Group of Companies, Inc. (Sandhu) purchased the Subway restaurant franchise for the restaurant at issue in 2010. As part of the purchase, Sandhu entered into a sublease with SRE for the restaurant space.

In 2018, Blackbird Investments, LLC (Blackbird) purchased the Kaleidoscope building with the intent to demolish the building and build a new structure; so it needed to terminate the leases of Kaleidoscope tenants. Blackbird contacted "Subway corporate" about terminating the lease and was informed it should negotiate with Sandhu. Blackbird did so and drafted an agreement to terminate the lease agreement for the Subway space. Blackbird and Sandhu entered into a Global Mutual Release and Settlement Agreement (Agreement), which required Blackbird to pay Sandhu $175,000 for the "premature cancellation of the business lease for the restaurant" and provided that Blackbird would pay Sandhu an additional $100,000 if it could not provide a new lease space to Sandhu by July 1, 2021. The Agreement specified that Sandhu was "solely responsible for acquiring any necessary approval of the terms of [the] Agreement from the Subway Franchise."

Blackbird paid Sandhu the $175,000. But it did not provide Sandhu with a new lease space by July 1, 2021. Blackbird also did not pay Sandhu the $100,000 for failing to provide the new lease space on time. So, Sandhu brought this action alleging Blackbird breached the Agreement.

Both parties sought summary judgment. The district court denied both motions. Six days later, more than a year after this case was initiated,[1] less than two weeks before trial, and well after the trial scheduling and discovery plan closed pleadings,[2] Blackbird filed a motion to assert counterclaims against Sandhu for breach of contract and equitable rescission. It asserted Sandhu breached the Agreement by failing to obtain approval to enter into the Agreement from SRE. Sandhu resisted.

At trial, the court reserved ruling on whether it would grant Blackbird's motion to amend to assert counterclaims. Following trial, the district court denied the motion to amend, noting it was filed shortly before trial and would involve an additional provision of the Agreement. As for Sandhu's breach-of-contract claim, the district court determined Blackbird breached the agreement and entered judgment in the amount of $100,000.

Blackbird filed an Iowa Rule of Civil Procedure 1.904 motion raising a number of issues, which the district court denied. Blackbird appeals.

**I.     Motion to Amend**

Blackbird first challenges the district court's denial of its motion to amend to add its counterclaims. We review the court's denial for an abuse of discretion. *Neylan v. Moser*, 400 N.W.2d 538, 543 (Iowa 1987). However, we have long "said that 'allowance of amendments should be the rule and the denial the exception.'" *Id.* (quoting *Chao v. City of Waterloo*, 346 N.W.2d 822, 825 (Iowa 1984)). "Our

---

[1] Sandhu filed its petition on July 14, 2021, and Blackbird filed its motion to amend on August 25, 2022.

[2] The trial scheduling and discovery plan required pleadings close sixty days before trial.

real inquiry in reviewing a trial court's ruling on a motion to amend is whether the ruling lacks a solid legal basis." *Id.*

Iowa Rule of Civil Procedure 1.402(4) provides the requirements to amend a pleading. It states:

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend a pleading only by leave of court or by written consent of the adverse party. Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires.

Iowa R. Civ. P. 1.402(4).

Blackbird argues the district court abused its discretion in denying the motion to amend because it would not have changed the issues at trial. Essentially, Blackbird argues that the basis for the counterclaims was the same as its defense against Sandhu's breach-of-contract claim—that Sandhu was actually the party that breached the Agreement by not obtaining approval from Subway and the Agreement failed for lack of consideration. Blackbird explains, "Its proposed counterclaim would have simply used these facts and theories as a sword, as opposed to a shield."

We disagree with Blackbird that its proposed amendment would not have changed the issues. Blackbird sought to add claims for breach of contract and equitable rescission. We understand Blackbird's argument that the addition of its counterclaims would not have introduced dramatically different issues into the trial. It seems clear from the trial that the crux of Blackbird's arguments would remain unchanged. However, it is not clear whether Sandhu would have taken a different

approach or sought to introduce additional evidence if it had gone into trial required to defend itself against the proposed counterclaims. The stakes for Sandhu would have shifted dramatically. Instead of only seeking the $100,000 it believed it was owed, it would have also risked the possibility of owing $175,000 instead. That dramatic shift in risk could have reasonably prompted a different approach to trial preparation and trial on Sandhu's part, for which it had no reasonable time to prepare. We find no abuse of the district court's discretion in declining to grant the motion to amend under these circumstances.

Moreover, Blackbird does little to explain why it sought to amend to include the counterclaims long after the pleadings window closed and so close to the trial date. It points to nothing other than the fact that the motions for summary judgment had been recently denied to explain why it took so long to file the motion to amend. But surely if Blackbird thought it was entitled to repayment of the $175,000 it would have filed the counterclaim straight away, shortly thereafter, or at least prior to the closing of the pleadings window. We find no abuse in discretion on the district court's part by denying the motion to amend based on its untimeliness. *See Holliday v. Rain and Hail LLC*, 690 N.W.2d 59, 65 (Iowa 2004).

Blackbird goes on to argue the district court should have amended the pleadings to include its counterclaims pursuant to rule 1.457. Rule 1.457 specifies that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." It claims that because Sandhu never objected to evidence as going beyond the original pleadings, Sandhu impliedly consented to trial of the counterclaims. We disagree. Sandhu explicitly refused to consent to trial of the

proposed counterclaims when it resisted the motion to amend. We will not conclude Sandhu silently changed course and impliedly consented to trial on the proposed counterclaims simply because it did not object to evidence that was properly introduced to support Blackbird's defense, which Blackbird asserts would have served as its support for its counterclaims.

Finally, we note that, even if the district court had abused its discretion in not granting Blackbird's request to amend to assert counterclaims, there was no prejudice to Blackbird. As Blackbird admits, the bases for its counterclaims were exactly the same as its bases for its defenses. As will be discussed in the next section, Blackbird lost on the merits on those bases as a defense. Consequently, Blackbird would have lost on its counterclaims for the same reasons. As a result, Blackbird was not prejudiced by the district court's refusal to allow counterclaims that would have been futile. *See Cap. Ideas, LLC v. Springboard Advert. LLC*, No. 20-0296, 2021 WL 4592831, at *7 (Iowa Ct. App. Oct. 6, 2021) ("But even when an amendment is timely, and even when it would not change the issues, the district court may still refuse the amendment if it would be futile.").

## II.     Breach of Contract

Finally, Blackbird challenges the district court's determination that it breached the Agreement by not making the $100,000 payment to Sandhu when it failed to provide new lease space by the deadline. "A breach-of-contract claim tried at law to the district court is reviewed by us for correction of errors at law. [T]he district court's findings of fact are binding on us if they are supported by substantial evidence." *Dolly Invest., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023) (alteration in original) (internal citations omitted).

Blackbird argues that, because Sandhu was not a party to the lease and was a mere sublessee, Sandhu could not have the authority to terminate the lease without approval of SRE, could not provide the necessary consideration to make the Agreement enforceable, and breached the Agreement by failing to obtain approval from SRE. However, Blackbird's arguments fail because the district court's determination that Sandhu was not required to obtain later approval from SRE to enter into the Agreement is supported by substantial evidence.

We agree with Blackbird that Sandhu did not have inherent authority to terminate the lease agreement as a mere sublessee. However, evidence presented at trial established that SRE/Subway approved and authorized Sandhu to handle the terms and negotiation for the early termination of the lease before the Agreement was even executed. For example, Blackbird's representative testified that when he contacted Subway about negotiating termination of the lease, Subway told him to go through Sandhu and negotiate with Sandhu. A principal of Sandhu testified she understood she was authorized to execute documents related to the early termination of the lease. Allen Weber, who facilitated communication between Subway corporate and Subway franchisees such as Sandhu, testified "a directive that came directly from Subway" stated that Sandhu had the authority to handle the early termination of the lease.

We understand Blackbird submitted evidence in the form of notes Weber took during a phone call with Subway corporate employees, which occurred after the Agreement was finalized, that raised questions about Sandhu's ability to actually enter into the Agreement. But no evidence established that Subway ultimately reached that conclusion. To the contrary, SRE/Subway never made any

claim against Sandhu asserting it did not have authorization to enter into the Agreement, nor has SRE/Subway made any claims against Blackbird for breach of the lease.[3]

We agree with the district court that while paragraph four of the Agreement required Sandhu to acquire "any necessary approval of the terms of [the] Agreement from the Subway Franchise," no approval was necessary.[4] That is because SRE/Subway already authorized Sandhu to handle the lease termination, so later approval was not required. As such, substantial evidence supports the conclusion that Sandhu provided consideration and did not materially breach the Agreement. Under the terms of the Agreement, when Blackbird failed to provide a new lease space by the deadline, it became obligated to pay Sandhu $100,000. Blackbird breached the Agreement when it did not make the required payment.

We affirm the district court.

**AFFIRMED.**

---

[3] We express no opinion on whether SRE or Subway could make any such claims, and nothing in this opinion should be interpreted as expressing any opinion on that issue.

[4] We reject Blackbird's attempt to argue because a prior sublessee did not have authority to modify the lease, Sandhu must not have had authority to terminate the lease either. The two situations are not necessarily similar. Here, Sandhu presented evidence that it was authorized ahead of time to handle the negotiations, and nothing in the record establishes similar facts as to the prior sublessee.