# IN THE COURT OF APPEALS OF IOWA

No. 24-1658
Filed September 17, 2025


**A.W., on behalf of N.W.,**
    Petitioner-Appellee,

**vs.**

**M.T.,**
    Respondent-Appellant.

_____


Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.


A father contests the Iowa Code chapter 236A (2024) protective order prohibiting contact with his daughter. **AFFIRMED.**


Myia E. Steines of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant.

Stuart G. Hoover of Alliance Law Office, East Dubuque, Illinois, for appellee.


Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

Four-year-old N.W. told her mother that her father was sexually abusing her. The mother, A.W., sought a protective order under Iowa Code section 236A.3(1)(b) (2024) barring the father, M.T., from contact with N.W. Appealing that order, M.T. contends that A.W. failed to meet her burden of proof. Finding that the mother proved the sexual abuse allegations by a preponderance of the evidence, we affirm.

## I.       Facts and Prior Proceedings

N.W. turned five in the summer of 2024. She lives with her mother, A.W.; her mother's fiancé; and her two-year-old half-brother. Under a custody decree, N.W. visited her father, M.T., every other weekend.

In April 2024, A.W.'s family was riding in the car when N.W. complained that her "gina" hurt.[1] In questioning from A.W.—recorded on a cell phone without N.W. knowing—the child made accusations against her father's paramour, Alicia. N.W. said Alicia had locked her in a dark room, hit her with the "pointy end" of a hammer, threw clothes at her, and tried to "touch her 'gina.'" N.W. did not implicate her father in that first disclosure. But in a later interview with a representative of the Illinois Department of Children and Family Services,[2] N.W. said her father touched her vagina. The girl added that M.T. warned her not to tell her mother or he would "effing" hurt N.W. A.W. said that N.W. also told her that M.T. held her wrist and directed her to touch his penis. The girl recalled that when she did so, her father would tell her: "Good job."

---

[1] N.W. was referring to her vagina.
[2] A.W.'s family relocated to Moline, Illinois, for her fiancé's work.

A.W. also recalled a troubling conversation with N.W. as the child was getting out of the bathtub. According to A.W., the child said she knew "what the boy part looks like." N.W. said: "It looks just like my brother's, and it sticks straight out." A.W. asked: "Whose did you see that sticks straight out?" And N.W. responded: "My dad." In her testimony A.W. said, to her knowledge, her daughter had no exposure to the difference between "an erect versus a flaccid penis" anywhere else.

Even before N.W.'s revelations, both her mother and grandmother noticed that she was acting more aggressively toward her little brother and other family members. A.W. also saw regressive behaviors, such as more "potty" accidents. N.W. suffered from "night terrors" and wanted her bedroom door left open. And N.W.'s grandmother noted N.W. was regressing in her speech patterns, "trying to play the baby."

Because N.W. expressed fear of her father, A.W. petitioned for relief from sexual abuse in July 2024. A hearing on the petition started on August 1 but was continued until September 16 because M.T.'s previous attorney withdrew suddenly, and he asked to retain new counsel. Ten days later, the district court issued an order prohibiting M.T. from having contact with N.W.[3] The court found that A.W. proved by a preponderance of the evidence that M.T. committed a sex act against N.W.[4] M.T. appeals.

---

[3] The order was set to expire one year from September 26, 2024.
[4] The court also said: "It is unclear why the Illinois report was not founded based on the child's revelations to the investigator."

## II.    Scope and Standards of Review[5]

Because the district court tried this case at law, ruling on objections as they were made, we review the proceedings for the correction of legal error rather than de novo.  *See* Iowa R. App. P. 6.907; *T.M. v. C.M.*, No. 22-1107, 2023 WL 5602660, at *2 (Iowa Ct. App. Aug. 30, 2023).

We must decide whether substantial evidence supports the district court's ruling.  *A.N. v. J.G.*, No. 19-0634, 2020 WL 2061881, at *2 (Iowa Ct. App. Apr. 29, 2020).  "Evidence is substantial if reasonable minds would find it adequate to reach the same finding."  *C.S. on behalf of H.S. v. J.C.*, No. 22-2035, 2023 WL 4752030, at *3 (Iowa Ct. App. July 26, 2023).  Even if the evidence supports different inferences, we do not substitute our findings for those of the district court.  *Id.*

## III.    Analysis

M.T. contends that A.W. did not offer sufficient proof that he committed sexual abuse against N.W.  To merit relief under chapter 236A, A.W. "must prove the allegation of sexual abuse by a preponderance of the evidence."  Iowa Code § 236A.6(1).[6]  The preponderance standard is "the lowest degree of proof upon which issues of fact are determined."  *State v. Beasley*, 50 N.W. 570, 570 (Iowa

---

[5] "Scope of review" and "standard of review" are often used interchangeably.  But the two terms carry distinct meanings.  "Scope of review" means the range of district court actions (or "what") an appellate court may examine.  *See* B. John Burns, Theory of Appellate Practice, 4A Ia. Prac., Criminal Procedure § 32:1 (2021 ed.).  By contrast, "standard of review" refers to our level of deference (or "how") we conduct that examination.  *Id.*

[6] In chapter 236A, the legislature defined "sexual abuse" as "any commission of a crime defined in chapter 709 or section 726.2 or 728.12."  Iowa Code § 236A.2(5).  As the district court found, chapter 709 prohibits sex acts with a child.  Contact between the finger or hand of one person and the genitalia of another fits the definition of a sex act under section 702.17(3).

1891). A preponderance means the allegation must be "more likely true than not true." *Holliday v. Rain & Hail L.L.C.*, 690 N.W.2d 59, 64 (Iowa 2004). This is not a criminal proceeding where guilt must be proven beyond a reasonable doubt. *See C.S.*, 2023 WL 4752030, at *4.

In protesting the protective order, M.T. takes two tacks. First, he maintains the district court gave too much weight to A.W.'s testimony because she lacked credibility. Second, he claims insufficient evidence corroborates the daughter's allegations of sexual abuse. Neither attack erases the substantial evidence supporting the district court's determination that the mother proved the father sexually abused the child by a preponderance of the evidence.

*Credibility.* First, M.T. accuses A.W. of pursuing an agenda to prevent him from having contact with their daughter. For instance, he points to her petition to terminate his parental rights, filed in response to his custody action in 2021, which she ultimately dismissed. But on the witness stand, A.W. denied efforts to exclude M.T. from their daughter's life. The mother described a smooth custody arrangement before N.W.'s allegations of abuse: "I thought things were finally looking all right, and my daughter was happy to go to her dad's." But after hearing N.W. allegations, A.W. believed it was in the child's best interests to prohibit contact with M.T.

The district court implicitly accepted A.W.'s testimony as true. And it rejected M.T.'s disavowal of N.W.'s allegations. Such determinations of witness credibility are better left to the factfinder than a reviewing court. *See State Sav. Bank v. Allis-Chalmers Corp.*, 431 N.W.2d 383, 386 (Iowa Ct. App. 1988). Here, an experienced trial judge had the chance to see and hear both parties—A.W.

relaying N.W.'s assertions of abuse pitted against M.T.'s denials—and found that A.W. carried her burden of proof. We decline M.T.'s invitation to rule that the district court gave A.W.'s testimony more weight than it warranted.

*Corroboration.* Second, M.T. cautions that N.W.'s allegations are inconsistent and not corroborated by other evidence. But corroboration is not necessary to credit accusations of sexual abuse. *See State v. Feddersen*, 230 N.W.2d 510, 515 (Iowa 1975). True, N.W. did not testify at the hearing on A.W.'s petition. But the court was entitled to believe the girl's statements offered through her mother's testimony.[7] And although it was not necessary, A.W. did offer evidence of N.W.'s age-inappropriate knowledge and aggressive and regressive behaviors to corroborate the girl's allegations of abuse. We find no deficit of corroboration.

Nor are we compelled to question N.W.'s veracity based on the inconsistencies that M.T. highlights on appeal. As our supreme court has found: "Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict." *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021). The same is true in this appeal. For example, M.T. points out that N.W. told a medical provider that he took her to Alicia's house "all the time" but he testified that they had only been there four or five times over six months. As A.W. counters, "all the time" was just a child's way of saying that something happened

---

[7] Neither at trial nor on appeal does M.T. challenge the second-hand nature of the evidence. So, for the purposes of our discussion, we will assume N.W. said the things that her mother and the child abuse investigator reported. And for the child's initial allegations, we have the cell-phone video.

often. We find sufficient consistency in N.W.'s reports of sexual abuse by her father to back the district court's findings.

As a final note, we address M.T.'s point that Iowa law enforcement has yet to bring criminal charges against him and the Illinois child abuse investigation led to an "unfounded" assessment. Neither situation changes our substantial-evidence review. We are not bound by the evaluations of those agencies. Because substantial evidence supports the district court's finding that it is more likely than not M.T. committed an act of sexual abuse against N.W., we affirm.

**AFFIRMED.**